**Wellington MITCHELL, Appellant,**

**v.**

**Malcolm BALDRIGE, Secretary of Commerce.**

**No. 84–5135.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Jan. 17, 1985.

Decided April 5, 1985.

Wellington Mitchell, pro se, was on the brief.

Elaine Mittleman, Falls Church, Va., was on the reply brief, for appellant.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and John W. Polk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WRIGHT, GINSBURG, and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This appeal calls upon us to clarify 1) the elements of a prima facie case of employment discrimination against an individual under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982) (as amended); and 2) the circumstances under which it is appropriate to dismiss an individual Title VII claim at the close of plaintiff's case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.[1]

Plaintiff-appellant Wellington Mitchell commenced this Title VII action against his employer, the Department of Commerce, charging both impermissible discrimination in denying him promotions and unlawful retaliation. Mitchell first alleged that his employer had discriminated against him on the basis of race and national origin in the process of filling two higher-level vacancies for which Mitchell had applied. Mitchell also alleged that certain actions taken by his supervisor had been in retaliation for Mitchell's pursuit of a complaint charging discrimination.

At the close of Mitchell's case, the district court granted defendant's Rule 41(b) motion and dismissed all Mitchell's claims. The district court held that Mitchell had failed to make out a prima facie case of discrimination or of reprisal.

With respect to both categories of claims—discrimination and reprisal—we conclude that the district court misapprehended what is required to establish a pri-

---

1. FED.R.CIV.P. 41(b) states, in relevant part:

    After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). A district court ruling on a Rule 41(b) motion "is not to make any special inferences in the plaintiff's favor.... Instead it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2371, at 224–25 (1971) (footnotes omitted).

ma facie case, and therefore held Mitchell to a standard more onerous than governing precedent permits. Based on the essential fact determinations made by the district court, we find that Mitchell did establish prima facie cases of discrimination and of reprisal.

The establishment of a prima facie Title VII case, however, does not render a plaintiff wholly invulnerable to a Rule 41(b) motion. Despite a plaintiff's satisfaction of the threshold requirement that he or she establish a prima facie case, judgment may be entered against the Title VII claimant at the close of plaintiff's case if: 1) in the course of plaintiff's case defendant put forth a nondiscriminatory reason for the actions at issue; 2) plaintiff had fair notice and opportunity to rebut the purported nondiscriminatory reasons; and 3) plaintiff failed to rebut persuasively.

Examining the record made at trial, we find that all three above-listed conditions for judgment against the plaintiff were satisfied with regard to Mitchell's reprisal claim. Through cross-examination of the plaintiff, the defense brought out plausible nondiscriminatory reasons for the actions Mitchell claimed were reprisals. Plaintiff, as a result of that cross-examination, had notice of the alleged nondiscriminatory reasons. During redirect examination of Mitchell, plaintiff's counsel attempted to show that the alleged nondiscriminatory reasons were disingenuous (pretextual). Thereafter, when the defense moved for judgment in its favor under Rule 41(b), plaintiff did not contend that he could tender any further evidence on the reprisal claim.

With the reprisal claim in this posture, dismissal was not premature. While we point out that the district court erred in stating that Mitchell failed to establish a prima facie case of reprisal, we nonetheless affirm the rejection of that claim because 1) a dispositive defense was presented effectively in the course of plaintiff's case-in-chief, and 2) plaintiff failed to rebut the defense persuasively despite reasonable opportunity to do so.

However, we find that the conditions precedent to a Rule 41(b) dismissal of Mitchell's discrimination claim were not met. As with the reprisal claim, plaintiff did establish a prima facie case of discrimination. In contrast to the unfolding of the reprisal claim, however, the alleged nondiscriminatory reasons for defendant's actions were *not* brought out during the presentation of plaintiff's evidence; they were raised for the first time by the district judge, on his own initiative, during oral argument on the Rule 41(b) motion. Plaintiff sought to reopen his case at that point, in order to attempt rebuttal of the alleged nondiscriminatory reasons. His request to reopen was denied. The nondiscriminatory reasons thus elicited by the trial judge became the basis for the district court's Rule 41(b) dismissal of Mitchell's discrimination claims.

As to this branch of the case, plaintiff did not receive due notice and a reasonable opportunity to be heard in rebuttal. Rule 41(b) dismissal of a discrimination claim for which a prima facie case has been established is not appropriate until such a rebuttal opportunity has been provided. Because the district court relied on a defense presented *after* plaintiff completed the presentation of his evidence, and did not give plaintiff a fair chance to respond, we vacate the district court's dismissal of Mitchell's discrimination claim and remand for further proceedings.

## I. PRIMA FACIE CASE

■ As the Supreme Court recently restated, once a Title VII case has been "fully tried on the merits," the question whether the plaintiff has established a prima facie case "is no longer relevant." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The High Court has admonished lower courts not to make the inquiry into the ultimate question of fact "even more difficult by applying legal rules which were devised to govern 'the allocation of burdens and order of presentation of proof.'" *Id.* at 716, 103

S.Ct. at 1482 (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

▮ When defendant moves to dismiss a Title VII claim at the close of plaintiff's presentation, however, the requirements for a prima facie case are significant. If those requirements have not been met, the defendant need not present a case; the suit can (and should) be terminated at that point. If, however, a prima facie case has been established, the trial ordinarily will proceed to the defendant's presentation. When a plaintiff who has carried the threshold burden rests, dismissal of the claim is proper only if a nondiscriminatory reason for defendant's actions emerged during plaintiff's case, plaintiff had a full and fair opportunity to rebut defendant's explanation, and plaintiff failed to do so persuasively.[2]

In this case, the district court misapprehended the prima facie case requirements and consequently determined, incorrectly, that Mitchell had failed to cross the first threshold in presenting his discrimination and reprisal claims. We here set out the standards that, under currently governing precedent, control the determination whether an individual Title VII plaintiff has made out a prima facie case.

### A. *Discrimination*

The Supreme Court has most recently reiterated the familiar standards of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in *Cooper v. Federal Reserve Bank*, ── U.S. ──, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984):

A plaintiff alleging one instance of discrimination establishes a prima facie case justifying an inference of individual racial discrimination by showing that he (1) belongs to a racial minority, (2) applied and was qualified for a vacant position the employer was attempting to fill, (3) was rejected for the position, and (4) after his rejection, the position remained open and the employer continued to seek applicants of the plaintiff's qualifications.

*Id.* at 2799 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093 & n. 6 (1981); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978).

▮ This *McDonnell Douglas* formulation was not the rod against which the district court measured Mitchell's presentation. *McDonnell Douglas* and its progeny call upon the Title VII plaintiff to show, in the first instance, only that he was *qualified* for the position sought. *See Lynn v. Regents of the University of California*, 656 F.2d 1337, 1344–45 (9th Cir.1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); *Davis v. Weidner*, 596 F.2d 726, 730 (7th Cir.1979); *see also Davis v. Califano*, 613 F.2d 957, 964–65 (D.C.Cir. 1980). Here, however, in ruling on defendant's Rule 41(b) motion, the district court demanded that plaintiff show in the first instance more than mere qualification. The district judge believed it "clear ... in cases alleging discrimination by virtue of failures to promote, that in order to prove a prima facie case of discrimination that the plaintiff must demonstrate that he is or was at least as qualified as the person chosen for the position." *Mitchell v. Baldridge*, No. 82–3020, transcript at 11 (D.D.C. Dec. 6, 1983) (ruling from the bench) [hereafter cited as Ruling].

---

2. If a nondiscriminatory reason for defendant's actions is plainly put forward during the presentation of plaintiff's evidence, and plaintiff, despite notice and an opportunity to do so, fails to rebut persuasively, then it is unnecessary to determine whether plaintiff initially established a prima facie case; in such circumstances, whether or not plaintiff made out a prima facie case, the claim is appropriately dismissed on a Rule 41(b) motion. *See Skillern v. Bolger*, 725 F.2d 1121, 1122 & n. 3 (7th Cir.), *cert. denied*, ── U.S. ──, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).

The district court drew support for this more stringent burden from language found in a footnote to *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The footnote described the *McDonnell Douglas* formulation as requiring the plaintiff to "demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. The district court apparently read the footnote words "absolute *or relative* lack of qualifications" as tacking onto an individual Title VII plaintiff's prima facie case a significant new essential element: proof that plaintiff, in comparison to the person selected, is as well (or better) qualified. The language in the marginalia from *Teamsters* is susceptible of this reading. The footnote's context and Supreme Court statements subsequent to *Teamsters,* however, securely indicate that the *McDonnell Douglas* formulation has not changed.

*Teamsters* did not itself involve the "allocation of proof in a private, non-class action challenging employment discrimination," *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823, *quoted in Teamsters,* 431 U.S. at 357, 97 S.Ct. at 1865; rather, *Teamsters* concerned the appropriate prima facie test for a class action. Moreover, in the text of *Teamsters,* the High Court described *McDonnell Douglas* as holding that a prima facie case was established "by show-

ing that a qualified applicant, who was a member of a racial minority group, had unsuccessfully sought a job for which there was a vacancy and for which the employer continued thereafter to seek applicants with similar qualifications." *Teamsters,* 431 U.S. at 357–58, 97 S.Ct. at 1865–66. Since *Teamsters,* the Supreme Court has reiterated the *McDonnell Douglas* standards—without adding a requirement that plaintiff take the initiative in comparing himself to those selected—in *Furnco,* 438 U.S. at 575, 98 S.Ct. at 2948, *Burdine,* 450 U.S. at 253 & n. 6, 101 S.Ct. at 1093 & n. 6, and *Cooper,* 104 S.Ct. at 2799.[3]

In light of the foregoing, we read the somewhat delphic *Teamsters* footnote as contemplating qualifications relative to the *entire pool from which applications are welcome,* rather than qualifications relative *only* to those eventually selected.

█ Applying the *McDonnell Douglas* prima facie case formulation to the district court's findings of fact, we conclude that at least in the case of the first of Mitchell's job applications, plaintiff did make out a prima facie case of discrimination. The district court found that Mitchell, who is black and Hispanic, had applied for a vacant computer system analyst position, *Mitchell v. Secretary of Commerce,* No. 82–3020, slip op. at 4 (D.D.C. Feb. 7, 1984) (supplemental findings of fact and conclusions of law) [hereafter cited as Supplement]; that the selection panel in charge of filing the vacancy had rated Mitchell as "qualified," *id.* at 5; that Mitchell was

---

**3.** Placing on the defendant the initial responsibility of explaining the relative qualifications of the plaintiff and the selectee is both the fairer and the more efficient mode of trying a disparate treatment claim. The issue in a case of an allegedly discriminatory failure to hire or promote is not the objective superiority or inferiority of the plaintiff's qualifications, but rather whether the defendant's selection criteria—be they wise or foolish—are *nondiscriminatory. Burdine,* 450 U.S. at 258–59, 101 S.Ct. at 1095–96. Certainly the defendant is in a better position to explain its selection criteria than is the plaintiff. "Placing this burden of production on

the defendant thus serves ... to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56, 101 S.Ct. at 1094–95; *see Lynn,* 656 F.2d at 1344 ("[S]ubjective criteria ... are best treated at the later stages of the process."); *Weidner,* 596 F.2d at 730 ("It seems more sensible to require the employer, in his rebuttal to the complainant's case, to offer his justification for his employment decision, rather than to force the complainant to refute hypothetical reasons why the employer might have found him relatively less qualified.").

rejected for the position; and that ultimately a white male was chosen, *id.*[4]

## B. *Reprisal*

The district court also held that Mitchell had not established a prima facie case of reprisal. According to the district court, "Plaintiff must set forth a prima facie case by proving that he was engaged in a protected activity which caused an adverse reaction by the employer taken with the intent or motive to retaliate." *Id.* at 12. The proof burden described is indeed a burden the plaintiff must eventually carry: it is the ultimate burden of persuasion on the Title VII claim. By definition it cannot also be the threshold test of what a plaintiff must show to make out a prima facie case of reprisal.

■ Adjusting the *McDonnell Douglas* formulation, this court and other circuits have stated the components of a prima facie case of reprisal:

> In order to establish a prima facie case of retaliation, a plaintiff must show: 1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two. As in a case of disparate treatment, this initial burden is not great. Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive.

*McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir.1984) (footnote omitted); *see also Smalley v. City of Eatonville*, 640 F.2d 765, 769 (5th Cir.1981); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980).[5]

■ The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.[6]

■ It was undisputed that in 1978, Mitchell joined his office's Equal Employment Opportunity (EEO) Committee. Record at 42–43, *Mitchell*, No. 82–3020 (D.D.C. Dec. 6, 1983) [hereafter cited as Record]. In October 1979, Mitchell received his first supervisor appraisal since joining the EEO Committee. In almost every category, Mitchell received lower ratings than those that the same supervisor had given Mitchell in the past. *Id.* at 45. Soon afterward, Mitchell started the grievance proceedings that eventually led to an EEO complaint. *Id.* at 46. In April 1980, Mitchell received another evaluation from the same supervisor; the ratings were all the same as or lower than the ones contained in the October 1979 evaluation. Within a week, Mitchell was told by the same supervisor that his performance was "marginal"; the supervisor warned Mitchell that he would receive an unsatisfactory rating if his performance did not improve. Supplement at 6–7. In May 1980, Mitchell filed an EEO complaint. *Id.* at 8. In June 1980, Mitchell received an unsatisfactory performance notice. In August 1980,

---

**4.** As to the second promotion application, the district court did not consider basic qualification for the position relevant, and therefore made no findings on that issue. *See* Supplement at 7–8. If, on remand, the district court finds that plaintiff was qualified for the position and thus had established a prima facie case, plaintiff must be given an opportunity to rebut the nondiscriminatory reasons on which the district court based its dismissal of the discrimination claim. If, on the other hand, the district court finds that Mitchell was not qualified for the second vacancy, no further proceedings on the second vacancy are needed.

**5.** In cases of alleged retaliatory discharge, failure to hire or failure to promote, the plaintiff must also show as part of the prima facie repris-

al case that he was qualified for the position. *Williams v. Boorstin*, 663 F.2d 109, 116–17 (D.C. Cir.1980); *see also Canino v. United States EEOC*, 707 F.2d 468, 471–72 (11th Cir.1983).

**6.** *See McKenna*, 729 F.2d at 791 (causal connection established by knowledge of employee's protected activity closely followed by adverse personnel action); *Bethlehem Steel*, 622 F.2d at 46 ("[C]ourts have recognized that proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment."); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1164 (10th Cir.1977); *Mosley v. General Motors Corp.*, 497 F.Supp. 583, 589 (E.D.Mo.1980); *Minor v. Califano*, 452 F.Supp. 36, 42 (D.D.C.1978).

Mitchell was suspended for one day without pay, allegedly for making false statements on a job application. *Id.* Mitchell testified that his supervisor had been aware of his EEO activities and grievance proceedings. Record at 51.[7] This evidence establishes a prima facie case of reprisal.

## II. RULE 41(b)

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. But the relatively light prima facie requirements do not alter the plaintiff's burden of ultimately persuading the factfinder by a preponderance of the evidence that the "defendant intentionally discriminated against the plaintiff." *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

■ At the close of the plaintiff's evidence, when a Rule 41(b) motion is made, the prima facie case and the ultimate burden of persuasion interact. We recapitulate here the allocation of burdens and proof presentation in individual Title VII actions. If the plaintiff makes out a prima facie case, the defendant has the burden of presenting a nondiscriminatory reason for his actions. If the defendant presents such a reason, the plaintiff may then attempt to show that the proffered nondiscriminatory reason is pretextual. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95. Although the plaintiff at all times bears the burden of persuasion, the plaintiff need not present evidence beyond that necessary to establish a prima facie case until *after* the defense has tendered a nondiscriminatory reason. If the nondiscriminatory reason has been presented by the defense during the plaintiff's case, the court must ensure that the plaintiff had a "full and fair opportunity to demonstrate pretext," *id.* at 256, 101 S.Ct.

at 1095, before the court can decide, on a Rule 41(b) motion, whether the plaintiff has carried his burden of persuasion. Otherwise the prima facie case construct, intended to set a procedural and analytical framework for judges and litigants, may create a trap for the unwary plaintiff.

Standards for granting a Rule 41(b) motion in a Title VII case must be tuned to this fundamental concern. As we earlier observed, *see supra* p. 84, if plaintiff has not established a prima facie case, dismissal of the claim at the close of plaintiff's presentation is appropriate. Again as previously stated, *see supra* p. 83, if plaintiff has established a prima facie case, the complaint may be dismissed when plaintiff closes only if: 1) in the course of plaintiff's case defendant put forth a nondiscriminatory reason for the action at issue; 2) plaintiff had notice and an opportunity to rebut the purported nondiscriminatory reason; and 3) plaintiff failed to rebut persuasively. *See Holden v. Commission Against Discrimination,* 671 F.2d 30, 36 (1st Cir.) ("In determining the propriety of a Rule 41(b) dismissal of a Title VII claim, the question is whether plaintiff had notice of defendant's stated reasons for dismissal and an opportunity to demonstrate their pretextual character."), *cert. denied,* 459 U.S. 843, 103 S.Ct. 97, 74 L.Ed.2d 88 (1982); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977); *see also Sime v. Trustees of California State University & Colleges,* 526 F.2d 1112, 1114–15 (9th Cir.1975) (emphasizing plaintiff's unused opportunities to rebut).

Applying these standards to the dismissal of Mitchell's charges, we rule that the dismissal of Mitchell's reprisal claim was appropriate, while the dismissal of his discrimination claim was not.

---

**7.** It was necessary for Mitchell's supervisor to be aware of Mitchell's EEO Committee activities, because such activities became part of Mitchell's work responsibilities. *See* Brief for Appellant app. D, exhibit 26; Memo for the Record from Patric Ferr, Chairperson, 1979 EEO Committee (Dec. 31, 1979), *reprinted in*

Brief for Appellant app. D. Mitchell's supervisor was contacted when Mitchell initiated the grievance proceedings that led to the EEO complaint. *See* Brief for Appellant app. D, exhibit 25; Letter from Merritt Techter to Wellington Mitchell (Jan. 25, 1980), *reprinted in* Brief for Appellant app. D.

## A. *Reprisal*

As explained above, *see supra* pp. 86–87, plaintiff did establish a prima facie case of reprisal. The employer actions alleged to be retaliatory were: the lower performance appraisals of October 1979 and April 1980; the warning that the next appraisal might yield an unsatisfactory performance rating; the June 1980 unsatisfactory performance notice; and the one-day suspension. During cross-examination of Mitchell, the defense elicited plausible nondiscriminatory reasons for each of these actions. The defense brought out the fact that the shift to lower performance ratings for Mitchell coincided not only with Mitchell's decision to join the EEO Committee, but also with a change in Mitchell's job responsibilities. These new responsibilities included three projects: one assigned in December 1978 and due January 1979; one assigned in May 1979 and due August 1979; and one assigned in June 1980 and due September 1980. Mitchell conceded that none of these projects was completed by the assigned deadline. The defense also showed during cross-examination that some of the projects were handed over to others after Mitchell had worked on them. Record at 87–103.

Mitchell further conceded during cross-examination that he did not have certain of the work experiences or qualifications that he had described himself as possessing on his first job application. *Id.* at 103–05, 163–64. This provided a nondiscriminatory explanation for the one-day suspension for falsification of a job application.[8]

Upon conclusion of the cross-examination of Mitchell, plaintiff's counsel had an opportunity to rebut the nondiscriminatory reasons brought out by the defense. On redirect, Mitchell testified that he believed

the time allotted for the assignments was insufficient, and that he had complained about the deadlines to his supervisor, but that unlike other employees Mitchell was not allowed to negotiate for extension of the deadlines. Mitchell also testified that it was not unusual for "bugs" to develop in a computer program after it was running, necessitating further work on an otherwise completed programming assignment. *Id.* at 110–18.

■ At this point, the district court was positioned to determine whether Mitchell had carried the ultimate burden of persuasion on the reprisal claim. The tendered nondiscriminatory reasons for the allegedly retaliatory actions were squarely before the court. Plaintiff had attempted to show that the reasons advanced by the defense were pretextual. The district court did not find plaintiff's rebuttal persuasive, and plaintiff did not suggest that he had further evidence on point. The district court's ultimate finding of fact on the reprisal claim is not clearly erroneous. We therefore affirm the dismissal of that claim.

## B. *Discrimination*

■ As explained above, *see supra* pp. 84–87, plaintiff did establish a prima facie case of discrimination as well as of reprisal. The district court based its dismissal of Mitchell's discrimination charges on its findings that the people selected for the vacancies at issue were better qualified than was the plaintiff. Supplement at 12. In so ruling, the district court incorrectly assumed that the plaintiff had to prove *as part of the prima facie case* that he was as qualified as or more qualified than those selected. We emphasize that if evidence of selectees' superior qualifications had been presented by defendant during plaintiff's

---

**8.** The district court did not find that Mitchell had in fact falsified the job application; it found only that the falsification charges were "as likely true as not," and that the suspension was not an act of reprisal. Supplement at 8. We understand the district court's findings to be that the suspension was motivated by a not unreasonable belief that Mitchell had made misrepresentations on the job application.

Although the selection committee's belief that Mitchell had made some misrepresentations on his job application caused the committee to lower the number of qualification points assigned to him, Mitchell was still "determined to be qualified for the vacancy." *See* Brief for Appellant app. D, exhibit 25, at 1, 8; Supplement at 5.

case-in-chief, and plaintiff had been given a full and fair opportunity to rebut, the district court could have rested a Rule 41(b) dismissal on a finding that the employer's decisions simply reflected the superior qualifications of the selectees, and not discriminatory motives. Reviewing the district court proceedings, we conclude that, as the case developed, plaintiff Mitchell was not accorded a full and fair opportunity to rebut the alleged nondiscriminatory reasons on which the district court based dismissal of Mitchell's principal claim.

In his case-in-chief, Mitchell introduced into evidence his own job application forms and the job application forms of those ultimately selected for the positions. The only testimony comparing the forms was Mitchell's. Mitchell noted several areas in which he had more experience or technical education than did a selectee. Record at 47–50. The defense made no reference to the selectees' application forms during cross-examination of Mitchell. Apart from Mitchell's brief comparison of selectees' application forms during direct examination, and the introduction of the forms themselves, no attention was directed to selectees' qualifications during the presentation of plaintiff's evidence.

In urging dismissal of Mitchell's discrimination claims on the Rule 41(b) motion, the defense did not argue that evidence already elicited demonstrated that the selectees were better qualified than was plaintiff. Rather, the defense argued that it was plaintiff's initial burden—part of his prima facie case—to prove that he was better qualified than the selectees, and that Mitchell had not presented "any solid testimony or evidence" to meet this purported burden. *Id.* at 160. Plaintiff, correctly reading the *McDonnell Douglas* formulation, had presented evidence of Mitchell's qualifications for the positions but had not explored the selectees' qualifications in depth. Because each side apparently believed the burden of coming forward with evidence of comparative qualifications was on the other, the issue was not fully explored; what

little testimony there was supported Mitchell.

Discussion of the selectees' application forms as evidence of the selectees' superior qualifications was initiated not by the defense but by the district judge himself. The district judge suggested to defense counsel that he undertake a comparison of the plaintiff's and the selectees' application forms. Defense counsel at first resisted, stating that he could not do so "without the aid of some expert testimony." *Id.* at 162. Eventually, he acceded to the judge's request. *Id.* at 201–08.

Because presentation of the selectees' superior qualifications as a nondiscriminatory ground for not promoting Mitchell occurred only *after* plaintiff had rested, plaintiff argued that defendant's Rule 41(b) motion should be denied. Alternately, plaintiff asked to reopen his case-in-chief so that he could rebut the nondiscriminatory explanation. *Id.* at 201. The district court did not grant plaintiff's request to reopen; instead, it proceeded to final judgment basing its dismissal of Mitchell's discrimination claim on findings that the selectees were better qualified than was Mitchell.

Because plaintiff had established a prima facie case of discrimination, and was not given a fair opportunity to rebut the nondiscriminatory reasons presented by the defense after plaintiff had completed presentation of his evidence, we vacate the dismissal of the discrimination claim and remand for further proceedings consistent with this opinion.

*It is so ordered.*