**John B. HAYES, Plaintiff,**

v.

**Donna SHALALA, Defendant.**

**Nos. 93–1504, 94–1645 and 95–1334.**

United States District Court, District of Columbia.

Oct. 13, 1995.

David H. Shapiro, Swick & Shapiro, Washington, DC, for plaintiff.

Stacy M. Ludwig, Assistant U.S. Attorney, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

John Blair Hayes, an African American male, has worked at the Department of Health and Human Services ("HHS"), Administration for Children and Families, Division of Acquisition Management, since 1975. He is currently a Level IV Contracts manager and a GS–14 step 10. In the mid–1980s, Mr. Hayes brought an employment discrimination action against HHS. In 1989, he and HHS entered into a settlement agreement which included an agreement to promote Mr. Hayes to his current GS–14 level, backpay and injunctive relief. In 1992, Mr. Hayes was denied promotion to a GM–15 supervisory position. The job was given to Barbara Twombly, a white female from outside HHS.

Mr. Hayes brought suit (Civil Action No. 93–1504, *Hayes I* ), alleging violations of Title VII, namely, that he was not selected for the supervisory position because of racial discrimination and also in retaliation for his previous Title VII suit and settlement. Two years later, after having served under the supervision of Ms. Twombly, Mr. Hayes brought another suit (Civil Action No. 94–1645, *Hayes II* ) alleging various instances of race and sex discrimination and retaliation, including denial of credit hours, unfair performance ratings, the instigation of a frivolous investigation against him, a groundless reprimand, and the use of abusive language. These consolidated cases are now before the Court on defendant's motion for summary judgment with respect to Civil Action Nos.

93–1504 and 94–1645 and plaintiff's opposition thereto.[1]

## I. SUMMARY JUDGMENT STANDARD

▮ Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. United States Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

▮▮ The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

▮ In an employment discrimination case, the plaintiff carries the initial burden of showing that the employer's actions, if unexplained, were more likely than not based on illegal discriminatory criteria. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discriminatory nonselection, a plaintiff must show that (1) he or she belongs to a statutorily protected group, (2) he or she applied and was qualified for a job for which the employer was seeking applications, (3) despite his or her qualifications, he or she was rejected, and (4) the position remained open. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824; *see, e.g., Garrett v. Lujan*, 799 F.Supp. 198, 199–200 (D.D.C.1992). Once plaintiff has made out this prima facie case, the burden of production shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its conduct. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802–05, 93 S.Ct. at 1824–26. The burden then shifts back to the plaintiff to provide some evidence, either direct or circumstantial, that the articulated reason for the defendant's conduct is merely pretextual. *Id.*

▮ In order to establish a prima facie case of retaliation, a plaintiff must show that (1) he or she has engaged in statutorily protected behavior, (2) he or she was subject to adverse personnel action by an employer, and (3) a causal connection existed between the two. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985) (citations omitted). As in a discrimination case, once the plaintiff has made out a prima facie case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the action, after which point the burden is on the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 87–88.

▮ Summary judgment in discrimination cases must be approached with special caution and the Court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff. *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994). Nevertheless, Mr. Hayes is not relieved of his burden to support his allegations of discrimination, retaliation and, ultimately, of pretext with affidavits or other competent evidence showing that there is a genuine issue for trial. In order to defeat a motion for summary judg-

---

**1.** Mr. Hayes' third claim, Civil Action No. 95– 1334 (*Hayes III*), will be addressed separately.

ment in a discrimination case such as this one, a plaintiff cannot rest on mere allegations of pretext but must point to genuine issues of material fact in the record. *See Johnson v. Digital Equipment Corp.*, 836 F.Supp. 14, 15 (D.D.C.1993). Evidence of discrimination or pretext that is "merely colorable" or "not significantly probative" cannot prevent the issuance of summary judgment. *Id.*

■ Defendant relies on *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), in which the Supreme Court described the plaintiff's final burden of persuasion. *See Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995) ("According to *Hicks*, a plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered reasons; at that point, the factfinder, if so persuaded, may infer discrimination.") (citations omitted). While *Hicks* holds that the factfinder at trial is not compelled to infer discriminatory pretext even when the plaintiff has discredited the employer's proffered reasons, at the summary judgment stage it is inappropriate for the Court to make that factual determination. If, on the basis of the probative evidence submitted in opposition to summary judgment under Rule 56(e), Fed.R.Civ.P., a reasonable factfinder could infer discrimination, summary judgment is inappropriate.

## II. *HAYES I*

■ In *Hayes I*, plaintiff alleges both discrimination and retaliation in his nonselection for the supervisory GM–15 position. Plaintiff has made out his prima facie case on both claims. With respect to his discrimination claim, plaintiff has shown that he was a member of a protected class, that he was a qualified applicant, and that he was rejected for the job which was subsequently given to someone not in the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824. With respect to the retaliation claim, plaintiff has shown that he has engaged in protected behavior and that he was subject to adverse action by his employer. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985). Defendant argues, however,

that plaintiff has not demonstrated the requisite causal link between the protected activity (his 1989 lawsuit) and the adverse action (his nonselection in 1992). *Id.* The Court disagrees.

■ "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d at 86. In this case, Robert Stovenour, Mr. Hayes' supervisor who failed to recommend him for the promotion in 1992, knew about and implemented the terms of the 1989 settlement. While the nonselection took place three years after the protected activity, plaintiff argues that since he applied for no other job in the interim, this was the first time he was vulnerable to retaliation. *See Globus v. Skinner*, 721 F.Supp. 329, 334–35 (D.D.C.1989) (two year lag between protected activity and personnel action was sufficient to support inference of reprisal where plaintiff's participation in litigation lasted until shortly before she was laid off). In light of Mr. Stovenour's duty to enforce the terms of the settlement agreement and his supervisory role, the Court cannot preclude the inference of causality for purposes of the prima facie case. *But see Garrett v. Lujan*, 799 F.Supp. 198, 202 (D.D.C.1992) (one year lag between protected activity and nonselection was too great to support an inference of reprisal).

■ Having concluded that plaintiff has made out a prima facie case of both discrimination and retaliation, the Court next looks at the employer's proffered reasons and at the issue of pretext. Defendant has articulated legitimate nondiscriminatory reasons for plaintiff's nonselection in response to both Mr. Hayes' discrimination and retaliation claims. Mr. Stovenour states that he recommended Ms. Twombly because she was an outsider, because of her experience in implementing automated activities in contracts offices, because of her supervisory experience, and because she had four excellent references.

Mr. Hayes disputes Ms. Twombly's credentials and Mr. Stovenour's reliance on them. Specifically, Mr. Hayes offers as rebuttal the following evidence: none of the final four candidates for consideration were African American and at least two other African American candidates besides Mr. Hayes were passed over; Mr. Hayes had good recommendations and qualifications; subsequent to Mr. Hayes' nonselection, Mr. Stovenour wrote Mr. Hayes a highly laudatory recommendation letter; automation was not a stated factor in the job search; Mr. Stovenour appears to have relied on only one, not four, of Ms. Twombly's references; Ms. Twombly required a year of training after she was hired to acquire the credential that Mr. Hayes already had; and finally, Mr. Stovenour's assertion that Ms. Twombly was a "people person" is contradicted by affidavits from other employees.

The Court finds that Mr. Hayes has raised genuine issues of material fact for trial on the issue of pretext and that a reasonable jury could infer discrimination and/or retaliation from defendant's conduct. *See Barbour v. Merrill,* 48 F.3d at 1277; *Lindahl v. Air France,* 930 F.2d 1434 (9th Cir.1991). Defendant's motion for summary judgment with respect to *Hayes I* therefore will be denied.

### III. *HAYES II*

#### A. *Plaintiff's Claims*

Mr. Hayes alleges that after he was passed over for promotion in favor of Barbara Twombly and filed his complaint for discriminatory and retaliatory nonselection in 1992, Ms. Twombly, then his supervisor, engaged in discriminatory and retaliatory actions against him. Specifically, he alleges that Ms. Twombly: (1) denied plaintiff accrual and use of credit hours; (2) unfairly charged him with one hour of AWOL; (3) gave him a less than Outstanding performance rating for 1992; (4) initiated a frivolous investigation into charges that plaintiff used abusive language; (5) required plaintiff but not other employees to submit a work plan; (6) officially reprimanded plaintiff on bogus charges of insubordination; (7) used abusive and offensive language toward him; (8) denied plaintiff's annual leave request for pre-paid sum-

mer vacation; (9) caused plaintiff's annual leave request to be approved late; and (10) caused an Inspector General report to contain retaliatory and intimidating language about plaintiff. Mr. Hayes further states that these discriminatory and/or retaliatory acts violated the 1989 court order enjoining HHS from discriminating and retaliating against him.

Defendant argues that plaintiff has offered no evidence that anyone else outside his protected group was treated differently in any of these areas and therefore that he has not made out a prima facie case of discrimination. Defendant also argues that Mr. Hayes has failed to exhaust his administrative remedies with respect to the tenth claim. Finally, defendant asserts that many if not all of these claims are nonactionable, intermediate employment decisions that do not qualify as adverse "personnel actions" under section 717 of Title VII, 42 U.S.C. § 2000e–16.

#### B. *The Prima Facie Case*

 With respect to his discrimination claims, defendant has failed to allege that anyone not in his protected group was treated differently with respect to any of the alleged actions. He therefore has failed to make out a prima facie case of discrimination. He has, however, alleged sufficient facts to make out a prima facie case of retaliation. He engaged in protected behavior by filing his 1992 action; he has alleged adverse action by his employer, Ms. Twombly; and there is sufficient evidence to support an inference of causality. Protected conduct followed by adverse action can sometimes justify an inference of retaliatory motive, particularly if the length of time between the two occurrences is short. *Mitchell v. Baldrige,* 759 F.2d at 86. In this case, Mr. Hayes' protected conduct—the filing of *Hayes I*—immediately preceded Ms. Twombly's alleged conduct as his supervisor; indeed his claim was based on Ms. Twombly having gotten the job instead of Mr. Hayes. Furthermore, plaintiff has submitted affidavit evidence that, if believed, could suggest animus between Ms. Twombly and Mr. Hayes. *See* Declaration of Dolores Lancaster ("Lancaster Decl.") ¶¶ 7–9; Declaration

of Kimberly Marshall ("Marshall Decl.") ¶¶ 2–6.

Defendant has proffered legitimate nondiscriminatory reasons for each of the actions taken against Mr. Hayes. The burden thus shifts to Mr. Hayes to rebut these asserted reasons and to create the basis for an inference that Ms. Twombly acted out of illegal retaliatory motives. Mr. Hayes has presented affidavit evidence from which a reasonable factfinder could infer that Ms. Twombly was hostile to Mr. Hayes and that there was a causal connection between Mr. Hayes' protected activities and that hostility. *See* Lancaster Decl. ¶¶ 7–9; Marshall Decl. ¶¶ 2–6; Hayes Decl. ¶¶ 8–16; *cf.* Twombly Decl. ¶¶ 24–30, 33–36. Since the credibility of these witnesses itself raises a genuine issue of fact that might determine the outcome of this case, it would be inappropriate to grant summary judgment on this basis.

### C. Failure to Exhaust

■ Defendant argues that Mr. Hayes failed to exhaust his administrative remedies with respect to his tenth claim regarding the Inspector General's report. While plaintiff did file an EEO claim and, subsequently, this action in a timely manner, defendant asserts that plaintiff frustrated the administrative process by failing to provide clarification to the administrative agency when requested to do so. *See* Decision Letter from HHS to John Hayes (May 18, 1994); *Pack v. Marsh*, 986 F.2d 1155, 1158 (7th Cir.1993).

■ Assuming, *arguendo*, that plaintiff failed to exhaust his administrative remedies when he did not respond to HHS's request for further clarification, plaintiff's tenth retaliation claim nevertheless survives. A plaintiff may raise a retaliation claim, although not a claim of discrimination, for the first time in federal court and need not exhaust his or her administrative claims. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (all circuits that have considered the matter agree that plaintiff need not exhaust administrative remedies for a retaliation claim); *Webb v. District of Columbia*, 864 F.Supp. 175, 184 (D.D.C.1994) (requiring plaintiff to refile every new instance of discrimination would serve only to invite further

retaliation and erect needless procedural barriers) (citing *Nealon v. Stone*, 958 F.2d at 590).

### D. Personnel Actions under Section 717

■ Defendant asserts that many if not all of Mr. Hayes' claims in *Hayes II* are nonactionable under section 717 of Title VII, 42 U.S.C. § 2000e–16, because they are not final "personnel actions." Defendant relies on *Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981), in which the Fourth Circuit held that Section 717 addresses discrimination only in "ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating ... [and not] the many interlocutory or mediate decisions having no immediate effect upon employment conditions." *Id.* at 233; *see also Debose v. Stone*, 1993 WL 475487, *5, 1993 U.S. Dist. LEXIS 16720, *14 (E.D.La.1993) (following *Page*). The Court in *Page* concluded that the racial composition of a review commission did not constitute an actionable personnel action. Defendant argues that many of Mr. Hayes' claims are aimed at similarly mediate supervisory decisions that did not affect the conditions of his employment.

First it should be noted that many of Mr. Hayes' allegations, if believed, might have affected the terms of his employment and thus have been actionable even under the analysis in *Page*. The inability to accrue credit hours, a reprimand, an unwarranted performance rating, and the Inspector General's report, all would have directly affected Mr. Hayes' work record or the terms of his compensation.

■ Even if some of plaintiff's claims did not directly affect his employment conditions, the Court rejects defendant's interpretation of Section 717. As a general matter, Section 717 extends the same protections to government employees as to employees in the private sector. *Wagner v. Taylor*, 836 F.2d 566, 574 (D.C.Cir.1987) (citing *Douglas v. Hampton*, 512 F.2d 976, 981 (D.C.Cir. 1975)). Moreover, Title VII claims are not limited to final employer actions or decisions that have a lasting effect on an employee's record. Hostile work environment claims,

for example, need not allege tangible or economic losses because, as the Supreme Court has reasoned, the language of " 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The Supreme Court has further held that

> [a] discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

*Harris v. Forklift Systems, Inc.,* —— U.S. ——, —— – ——, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993); *see also West v. Philadelphia Electric Co.,* 45 F.3d 744, 753 n. 7 (3d Cir.1995) ("The Court has recognized no difference in standards applicable to racially and sexually hostile work environments.") (citations omitted). This broad reading of Title VII's terms and purpose defeats defendant's suggestion that "personnel actions" in Section 717 should be interpreted narrowly.

This Circuit has not directly addressed the holding in *Page.* Where it has spoken, it has adopted a broader interpretation of actionable "personnel actions" than that of the Fourth Circuit. In *Palmer v. Shultz,* 815 F.2d 84, 97 (D.C.Cir.1987), for example, the D.C. Circuit began its discussion of Section 717 by stating that "[a] plaintiff may bring a Title VII claim for alleged discrimination with respect to *any employment decision* by an agency of the federal government." *Id.* at 97 (emphasis added). After noting that the Foreign Services Act provided its own extremely broad definition of personnel actions,

the court reasoned that "the Supreme Court . . . interpreted an analogous Title VII provision applying to private employers to encompass a claim of sex discrimination for sexual harassment even if the sexual harassment caused no tangible or economic loss." *Id.* at 97 (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The court then noted that "the language of 42 U.S.C. § 2000e–16 . . . is even broader, covering 'all personnel actions' based on sex, regardless of whether the personnel action affects promotions or causes other tangible or economic loss." *Palmer v. Shultz,* 815 F.2d at 98. Section 717 thus should be read to encompass all personnel actions, not only those with an impact on the employee's permanent employment record.[2]

This Court finds that Mr. Hayes' claims in *Hayes II* are "personnel actions" for the purposes of Section 717 of Title VII. Mr. Hayes must be permitted to argue that the totality of actions taken by his employer collectively created a harassing and retaliatory environment, even if individual actions may not have left a permanent paper trail or may even have been "mediate" employment decisions as identified by the Fourth Circuit in *Page.* Given this Circuit's more expansive reading of Section 717, this Court will not isolate and eliminate Mr. Hayes' individual personnel actions one by one where a reasonable jury might find that, taken together, those personnel actions constituted illegal retaliation.

## IV. CONCLUSION

Mr. Hayes has identified genuine issues of material fact with respect to his claim of discriminatory and retaliatory nonselection in *Hayes I.* He has also identified genuine issues of material fact with respect to his claims of retaliation in *Hayes II.* The retaliation claims in *Hayes II* are not barred by a failure to exhaust, and they are actionable personnel actions under 42 U.S.C. § 2000e–16. Accordingly, for the reasons stated in

---

**2.** In *Brown v. Secretary of the Army,* 918 F.2d 214, 218–19 (D.C.Cir.1990), the court's narrower reading of "personnel action" stemmed directly from the statutory language of the Back Pay Act itself, which by its terms applies only to those personnel actions that result in the withdrawal or reduction of pay.

this Opinion, the Court denies defendant's motion for summary judgment with respect to plaintiff's discrimination and retaliation claims in *Hayes I* and with respect to plaintiff's retaliation claims in *Hayes II*. Summary judgment is granted with respect to plaintiff's discrimination claims in *Hayes II*. A separate Order consistent with this Opinion has been filed this same day.

SO ORDERED.

### ORDER

These consolidated cases came before the Court on Defendant's Motion to Dismiss or for Summary Judgment and plaintiff's opposition thereto. The Court heard oral argument on August 29, 1995.

Based upon the papers submitted and the arguments of counsel, and for the reasons stated in the accompanying Opinion issued this same day, it is hereby

ORDERED that Defendant's motion for summary judgment with respect to plaintiff's discrimination and retaliation claims in Civil Action No. 93–1504 (*Hayes I*) is DENIED; it is

FURTHER ORDERED that defendant's motion for summary judgment in Civil Action No. 93–1645 (*Hayes II*) is GRANTED in part and DENIED in part. Summary judgment is granted with respect to plaintiff's discrimination claims and denied with respect to plaintiff's retaliation claims.

SO ORDERED.