Vandalia JOHNSON, Plaintiff,

v.

Michael F. DIMARIO, Public Printer, Government Printing Office, Defendant.

No. Civ.A. 95–1300 SSH.

United States District Court, District of Columbia.

Aug. 10, 1998.

Obie Pinckney, Jr., Oxon Hill, MD, for Plaintiff.

AUSA Stacy M. Ludwig, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendant.

### MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

Plaintiff, a black female employee of the United States Government Printing Office ("GPO"), filed a complaint alleging discrimination on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, reprisal in violation of Title VII, and intentional infliction of emotional distress. Her claims are based on the conduct of her second-level supervisor, Richard Holdcraft. On February 26, 1998, the Court issued a Memorandum Order granting defendant's motion for summary judgment on plaintiff's sexual harassment claims' and denying summary judgment on plaintiff's retaliation claim. The Court also requested supplemental briefing on plaintiff's racial harassment claim and invited the parties to address plaintiff's tort claim. The parties both filed supplemental pleadings in accordance with that Memorandum Order. Defendant also took the opportunity to submit supplemental arguments in support of his contention that he should be granted summary judgment on plaintiff's retaliation claim.

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Upon consideration of the supplemental pleadings and the entire record, the Court grants defendant's motion for summary judgment on plaintiff's racial discrimination and tort claims but denies defendant's motion on plaintiff's retaliation claim. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its reasoning. *See* Fed.R.Civ.P. 52(a).

## A. Racial Discrimination Claim

■ In order to survive summary judgment on a racially hostile work environment claim, plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Bundy v. Jackson*, 641 F.2d 934, 943 n. 9 (D.C.Cir.1981) ("[C]asual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action" under Title VII.). The Court considers such factors as the frequency and severity of the discrimi-

natory conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Villines v. United Brotherhood of Carpenters and Joiners of America, AFL—CIO*, 999 F.Supp. 97, 103 (D.D.C.1998); *Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 50 (D.D.C.1997).

■ The Court concludes that plaintiff has not proffered sufficient evidence to meet this standard. Plaintiff submitted a lengthy pleading in response to the Court's February 26 Memorandum Order, listing incidents which she claims support her racial discrimination claim.[1] Most of the incidents cited, however, deal with alleged sexual, not racial, harassment.[2] The only relevant facts proffered by plaintiff are that: (1) Holdcraft separated employees by race; (2) a copy of the "Roadkill Cafe Menu," which plaintiff found to be racially offensive, was placed on her chair; and (3) Holdcraft once referred to plaintiff and another black woman as "those people."[3] These facts, even if true, are not sufficient to establish a hostile work environment. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367; *Caldwell*, 966 F.Supp. at 50–51. Plaintiff makes the sweeping statement that "Mr. Holdcraft frequently engaged in ... racist, intimidating and degrading behavior with Black female employees," *see* Pl.'s Supp. Memo., at 4, but cites no specific examples of this behavior. She attaches the affidavits of Sandra Witcher and John Seiden in support of her motion, but although both Witcher and Seiden also conclude that Holdcraft was racist, neither of them can point to a specific example to support their conclusions.[4] *See*

1. It appears that plaintiff wishes this pleading to be treated as an affidavit. Therefore, to the extent the statements in the pleading meet the requirements of Federal Rule of Civil Procedure 56(e), the Court treats it as such.

2. The Court granted summary judgment in defendant's favor on plaintiff's sexual harassment claims. *See* Mem.Or. of Feb. 26, 1998.

3. Plaintiff also claims that Holdcraft always sent her on errands. This statement is not, however, sufficient to raise an inference of racial hostility, absent evidence that similarly situated white employees were not. *See Villines*, 999 F.Supp. 97,

103 (recognizing that, although disparate treatment can support a claim of hostile work environment, in order to do so "it must be shown that 'had the plaintiff been white she would not have been treated in the same manner' ") (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir.1996)).

4. Seiden specifically denies ever hearing Holdcraft make a racist comment. *See* Seiden Aff. p. 6; *see also* Witcher Aff. pp. 6–7 (testifying that the only supposedly racist comment Witcher can remember Holdcraft making is his statement that he once dated a black woman). Seiden explains that he believes that Holdcraft is racist because

*Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir.1998) (noting that conclusions in affidavits should be disregarded on motions for summary judgment unless the affidavits cite specific facts establishing the truth of the assertions); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir.1992) (stating that affidavits containing "rumors, conclusory allegations, and subjective beliefs" are insufficient to establish a claim of discrimination as a matter of law); *Thornton v. Neiman Marcus*, 850 F.Supp. 538, 543 (N.D.Tex.1994). Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's racial discrimination claim,

## B. Retaliation Claim

■ Plaintiff must show: "(1) that she engaged in a statutorily protected activity; (2) that an the employer took an adverse personnel action; and (3) that a causal connection existed between the two" in order to establish a *prima facie* case of retaliation. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir. 1985). Plaintiff's main claim of retaliation is that she received a written warning for signing another employee's leave slip. Defendant originally argued that plaintiff had not established a causal connection between the alleged retaliatory act and the filing of plaintiff's EEOC complaint. The Court rejected this argument. *See* Mem. Or., at 7–8. Defendant now contends that plaintiff has not established a *prima facie* case of retaliation on the ground that the written warning was not an "adverse employment action" because it was not an " 'ultimate employment decision[ ] such as hiring, granting leave, discharging, promoting, and compensating.' " Def.'s Supp. Memo. in Support of Mot. for S.J., at 8 (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)).

■ There is a circuit split on this issue. The Fifth and Eighth Circuits agree with the Fourth Circuit and hold that only adverse actions rising to the level of an ultimate employment decision are actionable under Title VII. *See Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260. The First, Ninth, and Eleventh Circuits all conclude that Title VII's protection against retaliatory discrimination extend to adverse actions which fall short of ultimate employment decisions. *See Wyatt v. City of Boston*, 35 F.3d 13, 15–16 (1st Cir.1994); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375–1376 (9th Cir.1987); *Wideman v. Wal–Mart Stores Inc.*, 141 F.3d 1453, 1456–57 (11th Cir.1998). Although the D.C. Circuit has never addressed this precise issue (indeed, it has expressly refused to decide the issue on two occasions, *see Taylor v. FDIC*, 132 F.3d 753, 764–65 (D.C.Cir.1997); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1555 (D.C.Cir.1997)), it has indicated that the Age Discrimination in Employment Act's anti-retaliation clause, which is identical to Title VII's, "does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Passer v. American Chem. Soc'y*, 935 F.2d 322, 331 (D.C.Cir.1991). The Court thus concludes that our court of appeals would agree with the First, Ninth, and Eleventh Circuits that Title VII's protection extends to non-ultimate adverse personnel actions. *See also Hayes v. Shalala*, 902 F.Supp. 259, 267 (D.D.C.1995) (noting that when the D.C. Circuit "has spoken, it has adopted a broader interpretation of actionable 'personnel actions' than that of the Fourth Circuit").

■ Applying this standard to plaintiff's retaliation claim, the Court concludes that although "not everything that makes an employee unhappy is an actionable adverse action," *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996); *see also Wideman*, 141 F.3d 1453, 1456 (observing that "there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause"), the written reprimand which was placed in plaintiff's file was an "adverse action" sufficient to establish a *prima facie*

of "his motions or body language," but the only examples of behavior Seiden cites in support of this conclusion are sexual, not racial, in nature

(Seiden testifies that Holdcraft makes crude sexual remarks about both the black and white women in the office). *See* Seiden Aff. pp. 6–8.

case of retaliation. *See Fowler v. Sunrise Carpet Indus., Inc.*, 911 F.Supp. 1560, 1582 (N.D.Ga.1996) (holding that "written reprimands ma[k]e the future loss of tangible benefits more likely.... [and][t]hus can be used to chill employees' statutorily.... protected speech," qualifying them as adverse actions); *Hayes*, 902 F.Supp. at 266 (observing that a formal reprimand could affect the terms and conditions of employment because it would affect plaintiff's work record); *Gold v. Gallaudet College*, 630 F.Supp. 1176, 1187 (D.D.C.1986); *see also Wyatt v. City of Boston*, 35 F.3d at 15–16 (citing "unwarranted negative job evaluations" as an example of an adverse action). Defendant admits that the written reprimand had the potential of affecting plaintiff's employment because it could have served as the foundation for future corrective action.[5] *See* Supp. Decl. of William T. Harris ¶ 4 (April 24, 1997).

 Plaintiff also raised a new retaliation claim in her latest pleading. She claims that in April of 1998, plaintiff was told that she would not be conducting a safety inspection which she had performed on several previous occasions without incident. The Court disagrees that this new incident may serve as the basis for an additional reprisal claim. Plaintiff has not moved to amend her complaint to add this new claim as required by Federal Rule of Civil Procedure 15. Moreover, "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *See Mungin*, 116 F.3d at 1557; *see also Wideman*, 141 F.3d 1453, 1456. Plaintiff has proffered no evidence that this change in her duties could affect future evaluations or opportunities for advancement.

## C. Intentional Infliction of Emotional Distress

 The only possible jurisdictional basis for plaintiff's intentional infliction of emotional distress claim is the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–2680 ("FTCA"). Absent full compliance with the conditions placed on the federal government's limited waiver of sovereign immunity, however, the Court lacks jurisdiction to entertain a tort claim against the federal government. *GAF Corp. v. United States*, 818 F.2d 901, 904 & n. 6 (D.C.Cir.1987). One such condition is that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a); *GAF*, 818 F.2d at 904. The record does not indicate that plaintiff filed an administrative tort claim, nor does the complaint allege that fact. *See Hatcher–Capers v. Haley*, 762 F.Supp. 393, 396 (D.D.C.1991); *see also* Declaration of Carol Hodges ¶ 3. Accordingly, it hereby is

ORDERED, that defendant's motion for summary judgment is granted in part and denied in part. It hereby further is

ORDERED, that defendant's motion for summary judgment is granted on plaintiff's racial discrimination and intentional infliction of emotional distress claims. It hereby further is

ORDERED, that defendant's motion for summary judgment is denied on plaintiff's retaliation claim.

SO ORDERED.

---

5. Defendant also proffers evidence that the reprimand has since been removed from plaintiff file, *see* Supp. Decl. of William T. Harris ¶ 4 (April 24, 1997), but although this fact may be relevant to the question of remedy, it is not relevant to whether defendant is liable for retaliation. *See Mungin*, 116 F.3d at 1555 (citing *Milton v. Weinberger*, 696 F.2d 94, 99 (D.C.Cir.1982)).