**Arthur McMILLAN, Plaintiff,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Defendant.**

No. 3:96–1227–19BC.

United States District Court, D. South Carolina, Columbia Division.

Sept. 2, 1997.

Herbert W. Louthian, Louthian and Louthian, Columbia, SC, for plaintiff.

Arthur McMillan, Columbia, SC, pro se.

Michael Hart Montgomery, Lide Montgomery Potts and Medlock PC, Columbia, SC, Stephan V. Futeral, Finkel, Altman & Bailey, Charleston, SC, Thomas Travis Medlock, Columbia, SC, for defendant.

## ORDER

SHEDD, District Judge.

This matter is before the Court for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Joseph R. McCrorey, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.). In the Report, Magistrate Judge McCrorey recommends that the Court grant defendant's motion for summary judgment. Plaintiff has filed objections to the Report.

In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections.... The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the

report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F.Supp. 137, 138 (D.S.C.1992) (citations omitted). In light of this standard, the Court has reviewed, de novo, the Report and the objections thereto and finds the Report is proper. Therefore, the Court will accept the Report and order that judgment be entered accordingly.

**IT IS THEREFORE ORDERED** on this the 2nd day of September, 1997, at Columbia, South Carolina, that the Report be **ACCEPTED,** plaintiff's objections be **OVERRULED,** and defendant's motion for summary judgment be **GRANTED.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

McCRORERY, United States Magistrate Judge.

The plaintiff, Arthur McMillan (McMillan), filed his complaint in this court on April 26, 1996, alleging a violation of his rights under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*[1] McMillan, a black male, alleges that he was denied a pay increase based on his race and that he was retaliated against for filing and pursuing a charge of discrimination. The defendant is the South Carolina Department of Corrections (SCDC). SCDC filed an answer on June 13, 1996, and an amended answer and counterclaim[2] on July 8, 1996.

---

**1.** Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g). Because this is a dispositive motion, this report

and recommendation is entered for review by the court.

**2.** An order of dismissal of the counterclaim, pursuant to Rule 41(a)(1) Fed.R.Civ.P. and the con-

An amended complaint, alleging further retaliation, was filed on January 29, 1997. An amended answer was filed on February 3, 1997. On December 13, 1996, SCDC filed a motion for summary judgment, along with various exhibits (SCDC Ex. __). McMillan filed a memorandum in opposition to SCDC's motion for summary judgment (McMillan's Opposition Memorandum) on February 19, 1997, along with numerous exhibits (McMillan Ex. __). On February 26, 1997, SCDC filed a reply (SCDC's Reply Memorandum) to McMillan's memorandum in opposition to SCDC's motion for summary judgment.[3] On March 12, 1997, SCDC filed a motion to exclude evidence and testimony of McMillan's witnesses at trial.[4] McMillan filed a response to the motion to exclude on February 26, 1997.

### SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston,* 929 F.2d 1009, 1011 (4th Cir.1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, " 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact.'* " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Genuineness means that the evidence must create fair doubt; wholly specu-

lative assertions will not suffice." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 874–75 (4th Cir.1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and *Doyle v. Sentry Inc.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed.R.Civ.P. 56(e) ], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Baber,* citing *Celotex Corp., supra.* Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) and *DeLeon v. St. Joseph Hospital, Inc.,* 871 F.2d 1229, 1233 (4th Cir.1989), n.7, *cert. denied,* 493 U.S. 825, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Martin v.*

sent motion of both parties, was filed by the Honorable Dennis W. Shedd, United States District Judge, on September 27, 1996.

**3.** Additionally, on February 25, 1997, SCDC filed a supplemental memorandum in support of its motion for summary judgment (concerning the timely filing of the complaint). On February 27,

1997, McMillan filed a memorandum in opposition to SCDC's supplemental motion for summary judgment. In a letter dated March 5, 1997, SCDC withdrew its supplemental motion for summary judgment.

**4.** This motion is currently pending.

*John W. Stone Oil Distrib., Inc.,* 819 F.2d 547 (5th Cir.1987) and *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954 (4th Cir.1996).

## FACTS

McMillan was employed by SCDC as a grade 38 Business Manager III on June 14, 1993, earning $41,640 [5] per year. Prior to his employment by SCDC, McMillan was employed as an audit supervisor with the South Carolina Department of Education. Nine months after McMillan was hired as Business Manager III, his supervisor, Superintendent Dr. James R. Archie, wrote to Deputy Commissioner Milton Kimpson requesting an increase in McMillan's salary. Kimpson supported and requested a special pay increase based on McMillan's assumption of additional duties (implementation of a micro-computer system and a program/audit of institutional special funds accounts) and his job performance. The request for increase was reviewed by the Executive Staff which consisted of the SCDC Commissioner Parker Evatt and three deputy commissioners. On April 12, 1994, the Executive Staff discussed procedural guidelines for granting special pay increases, but delayed action on McMillan's and another employee's salary increase requests.

Kimpson retired in June of 1994 and was replaced by Tony Strawhorn. Archie wrote to Strawhorn concerning the increase request. Strawhorn stated that he could not support the proposed increase based on the salary McMillan was receiving compared to others in his classification. McMillan wrote to Strawhorn on September 16, 1994, and to Evatt on September 26, 1994. Evatt requested that Strawhorn include McMillan's salary request on the agenda of the next Executive Staff meeting. The Executive Staff again reviewed McMillan's increase request on October 12, 1994. Evatt wrote a memorandum to McMillan on October 24, 1994, informing McMillan that his request for

salary adjustment had been disapproved because his salary was above both the agency and state average for employees in his classification and his years of service was below the agency and state averages. McMillan Ex. 2. On January 24, 1995, McMillan filed a charge of discrimination, based on race because he had been denied a raise, with the South Carolina Human Affairs Commission (SCHAC).

Michael Moore became Director of SCDC in March 1995, replacing Evatt, and began a reorganization of SCDC. In June 1995, Strawhorn notified Archie that the Business Manager III position would be transferred from the Division of Education Services to Financial Accounting. On October 2, 1995, SCHAC dismissed McMillan's charge and issued a right-to-sue letter. The Equal Employment Opportunity Commission (EEOC) issued its determination and dismissed McMillan's charge on February 1, 1996. On May 1, 1996, an investigation of racial discrimination at SCDC was completed for the State Budget and Control Board (SCBCB) and a study was issued (SCBCB Study).[6] On May 28, 1996, Moore wrote to McMillan informing him that his position was to be eliminated under a reduction in force (RIF) on August 30, 1996, but that Moore had instructed John Near, Division Director of Human Resources, to give him every consideration under the RIF policies. On May 30, 1996, McMillan filed a second complaint with SCHAC alleging retaliation. McMillan was transferred to Financial Accounting in July 1996. His new supervisor was Evelyn Sequi, a white female who was hired as Fiscal Manager II on January 8, 1996. McMillan states that he did not receive a position description for his new job until eleven weeks after he started the job. In November 1996, he received a "meets" expectations rating, which he states was his lowest rating in his seventeen years of state employment. A series of written warnings, one for "rude, disrespectful, and contemptuous conduct toward his

---

5. There is a discrepancy in the initial salary as discussed by the parties. McMillan states that his initial salary was $41,640, while SCDC maintains that his initial salary was $43,324. Viewing the facts in the light most favorable to the plaintiff, his initial salary was $41,640.

6. This study reviewed statistical information regarding disciplinary actions, hiring, promotions, and pay practices of SCDC for four years spanning the directorships of Evatt and Moore.

supervisor [Sequi]," another for excessive use of sick leave, and a third for unauthorized absence, were issued after that time. On February 4, 1997, McMillan received a five-day suspension for having accumulated three offenses in a ninety-day period.

## DISCUSSION

McMillan alleges that the defendants violated his rights because: (1) he was denied a pay increase, but a pay increase was awarded to a white employee; (2) SCDC engaged in a plan, pattern, and practice of race discrimination as to black employees and intentionally discriminated against him because of his race; and (3) SCDC retaliated against him after the filing of the administrative charge and the filing of this action. SCDC argues that it should be granted summary judgment because: (1) McMillan fails to establish a prima facie case of discrimination for the denial of the pay raise or for failure to promote; (2) SCDC has articulated a legitimate, nondiscriminatory reason for not approving the raise which McMillan has failed to rebut; (3) McMillan fails to establish a pattern or practice of discrimination, (4) McMillan fails to show discrimination because he did not provide SCDC with reasonable notice of the alleged discriminatory activity and an opportunity to appropriately respond;[7] (5) McMillan fails to establish a prima facie case of retaliation; and (6) SCDC has provided a legitimate, nondiscriminatory reason for the alleged actions and McMillan fails to show that these reasons are pretextual.[8]

### 1. *Disparate Treatment*

McMillan alleges that he was discriminated against because: (1) although he was quali-

fied, SCDC failed to give him a ten percent pay increase, but awarded a ten percent pay increase to a white employee, (2) SCDC has engaged in a plan, pattern, and practice of race discrimination as to black employees and has intentionally discriminated against McMillan because of his race, granting raises and promotions[9] to whites and denying raises and promotions to similarly situated black employees because of their race; and (3) prior to McMillan becoming employed with SCDC, his predecessor, a white male, was rewarded with an increase in pay and a promotion despite poor job performance and despite the fact that he had been absent from the job for a substantial period of time until he was allowed to retire. SCDC argues that: (1) McMillan fails to establish a prima facie case of discrimination; (2) SCDC has articulated a legitimate, nondiscriminatory reason for its actions; and (3) McMillan fails to provide a triable issue of pretext.

■ McMillan has not presented any direct evidence of racial discrimination. In order to establish a prima facie case of discriminatory denial of a pay raise,[10] plaintiff is required to prove that:

1. he is a member of a protected group;

2. he applied for the position [or raise] in question;

3. he was qualified for the position [or raise]; and

4. he was rejected for the position [or raise] in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination.

---

7. SCDC argues, pursuant to *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir.1995), that McMillan failed to provide reasonable notice to SCDC of the allegedly discriminatory activity to enable SCDC the opportunity to appropriately respond. The notice rule discussed in *Dennis*, however, involved a hostile work environment claim. McMillan has not alleged a hostile work environment, and thus SCDC's argument fails.

8. SCDC, in its reply memorandum, argues that the plaintiff failed to timely file his complaint. As discussed in footnote number three above, SCDC has since withdrawn this argument.

9. It is unclear whether McMillan alleges that he was denied a promotion based on race as part of

his disparate treatment claim (promotions will be discussed further below concerning his retaliation claim). He does not, however, indicate any position for which he applied and was denied. Further, Strawhorn states that McMillan never applied for any other position after becoming a Business Manager III. *See* Strawhorn Aff. Therefore, for purposes of his disparate treatment claim, only claims concerning the denial of a pay increase will be considered.

10. The parties both have applied the framework for discriminatory failure to promote to this situation.

*Alvarado v. Board of Trustees of Montgomery Community College,* 928 F.2d 118, 121 (4th Cir.1991). The burden of establishing a prima facie case is not an onerous one. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing defendant to come forward with some response." *St. Mary's Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff may then only prevail by persuading the factfinder that the employer's articulated reason was merely pretextual and that unlawful discrimination had a determinative influence on the employer's decision. *Hazen Paper Company v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338.

### a. *Prima Facie Case*

■ As to the raise, the parties do not appear to dispute that McMillan was a member of a protected group and applied for the raise. Further, SCDC does not appear to take issue with whether McMillan was qualified for the raise. SCDC does, however, dispute the fourth element that McMillan was rejected for the raise in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. McMillan never directly addresses this issue. It appears, however, that McMillan argues that he was rejected for a raise in favor of someone

not a member of the protected group because: (1) Robin Zimmerman received such a raise; (2) his predecessor, Marvin Gunnells, received such a raise; and (3) a pattern or practice of discrimination exists.

### (1) *Zimmerman*

McMillan first appears to argue that he has established his prima facie case because, although he was rejected for a pay increase, Robin Zimmerman, a white female, received such an increase. Zimmerman was SCDC's Public Affairs Director and was classified a grade 44. A ten percent performance pay increase was requested for Zimmerman by Evatt on April 27, 1994 and was approved by John Near, Director of Personnel, on April 28, 1994. SCDC argues that Zimmerman's raise was a "performance pay" increase, rather than a "special pay"[11] increase and that McMillan and Zimmerman are not similar. Zimmerman received her increase based on a rating of "substantially exceeds." McMillan admitted that there is "nothing similar" between Zimmerman and himself. McMillan Dep., at 90. The approval process differed for McMillan's and Zimmerman's raise requests. The plaintiff has failed to show that he and Zimmerman are similarly situated for purposes of disparate treatment analysis. *See, e.g., Burdine,* 450 U.S. at 258, 101 S.Ct. 1089.

### (2) *Gunnels*

McMillan's predecessor was Marvin Gunnels. McMillan alleges that Gunnels was awarded a grade reclassification and pay increase in spite of poor job performance and being absent on leave. Gunnells' position was reclassified to Business Manager III with a grade of 38 and a salary of $41,146 effective November 2, 1992. *See* McMillan Ex. 2, Letter dated December 4, 1992. McMillan entered SCDC in a lateral move from another state agency at the same grade

---

11. McMillan's request for a pay increase was referred to as a "salary adjustment" by Archie and Evatt. SCDC Exs. D and F. Both Evatt and Patricia Thrailkill, Human Resources Director, referred to Zimmerman's pay increase as a "performance" pay increase. SCDC Exs. G and L. The Executive Staff referred to McMillan's request as a "special" pay increase. SCDC Ex. I.

Although Linda Smith, in the Human Resource Department, wrote that "Performance Pay Increase and Decreases Guidelines" were used in the October 1994 raise denial, she referred to McMillan's request as a "special" pay increase request. McMillan Ex. 2, Letter dated April 26, 1995.

as Gunnels and at a salary higher than Gunnels. A reclassification is the assignment of a position which is the result of a change in duties and responsibilities. In Gunnels' case, the reclassification was submitted to the State Office of Human Resources with the SCBCB for review and was approved by the SCBCB. Thrailkill Aff. McMillan fails to show how Gunnels' reclassification is a rejection of his raise in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination.

### (3) *Pattern or Practice*

McMillan appears to argue that he shows a pattern or practice of discrimination based on the SCBCB study. SCDC argues that McMillan fails to show a pattern or practice of discriminatory promotion or salary practice because he has failed to show more than a mere occurrence of isolated or sporadic discriminatory acts and because he fails to show that such differences were racially premised.

■ The Fourth Circuit has indicated that "statistics cannot alone prove the existence of a pattern or practice of discrimination, or even establish a prima facie case ..." *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 753 (4th Cir.1986), *aff'd en banc*, 835 F.2d 535 (4th Cir.), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2872, 101 L.Ed.2d 907 (1988); *see also Taylor v. Secretary of the Army*, 583 F.Supp. 1503 (D.Md.1984)(plaintiff may not avoid burden of proving each element of prima facie case by relying merely on statistical evidence which purportedly establishes a pattern and practice of racial discrimination). Establishing a prima facie patterns and practice case is logically more onerous than a simple disparate treatment case because it requires a plaintiff "to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). By a preponderance of the evidence, the plaintiff must establish "that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Id.*

McMillan points to the SCBCB study to support his claim. Specifically, the investigation concluded that the areas where white employees tended to do significantly better than black employees were "in numbers of performance pay increases given to white employees vs. black employees during both Mr. Evatt's (13 white vs. 1 black) and Mr. Moore's (18 white vs. 8 black) administrations." SCBCB Study, Cover Letter, at 2. With regard to pay actions for non-security employees (a majority of SCDC employees are employed as correctional officers, the plaintiff is a non-security employee), the investigation found:

> Performance pay increases when given were awarded to more white employees than black in both administrations in the non-security area. During Mr. Evatt's last year, 12 employees received an average 7.07% performance pay increase and one black employee received an 11.09% increase. In Mr. Moore's first year, 17 white employees received an average 8.63% performance pay increase, while two black employees received an average 8.65% increase.

SCBCB Study, at 5–6.

McMillan argues that, because "the investigators found it 'difficult to make conclusive findings regarding the various issues which have been raised' and that 'there are conflicting allegations in a number of cases,'" material facts are disputed. McMillan Opposition Memorandum, at 19. McMillan also discusses a number of other incidents in which SCDC employees have either filed lawsuits or are contesting promotions, pay rates, or pay increases. He has not provided anything to show that these incidents were racially motivated. Further, these incidents, with the exception of the case of Vernon Jones, do not involve special pay increases. A special pay increase was requested for Jones, a white employee, on September 2, 1994. Jones earned consistent "exceeds" performance evaluations, worked on several major projects, his salary was only six percent above the minimum salary in his pay bracket, and the average salary for a Senior Accountant was $2,175 higher than his. McMillan Ex. 2, Memorandum dated September 2,

1994; Letter dated April 26, 1995. Although McMillan claims this was discrimination because Myrtle Mathis, another Senior Accountant, wrote a letter to James Burnett, the Director of Financial Information and Reporting, stating that her workload had increased and requesting a salary increase or reclassification, there simply is nothing to show that Mathis' denial of a raise was racially motivated. Even in the light most favorable to McMillan, the evidence best amounts to nothing more than "isolated... or sporadic discriminatory acts," which are insufficient to support a pattern or practice claim. *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843.

b. *Legitimate, Nondiscriminatory Reason*

■ Even if McMillan has established his prima facie case, SCDC has articulated legitimate, nondiscriminatory reasons for the denial of McMillan's pay increase request. Once the plaintiff creates an inference of discrimination by setting forth a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action in order to rebut the inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089. The employer's burden at this stage is only one of going forward of adducing evidence, the ultimate burden of persuasion always rest on the plaintiff. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

SCDC argues that McMillan was denied the raise based on a comparison of other employees in McMillan's classification, which revealed that McMillan was being paid more than others in his classification and in excess

of the SCDC and State averages for that level classification.

McMillan admits that Strawhorn told him that he could not support a raise for McMillan because McMillan made more than any other business manager at SCDC. McMillan Dep., at 19. On October 24, 1994, Evatt wrote a letter to McMillan in which he stated:

A review of your salary shows you are above both the agency and state average for employees in your classification. Conversely, however, your 1.25 years of service are actually below the agency and state average of 3.75 years and 3.42 years, respectively, when compared with other employees in the same classification.

McMillan Dep., Ex. 4A.

McMillan argues, however, that SCDC's reasons were false because SCDC misstated both his salary and years of service.[12] He argues that the grounds raised by SCDC were false because SCDC misrepresented his initial salary and his time in his grade level. The salary range of the eight other Business Manager IIIs ranged from $31,021 to $42,193. At a salary rate of $43,324, McMillan's salary was higher than all others in his class. Even if McMillan's salary in October 1994 was only $41,640 (McMillan appears to claim that his salary was still $41,640, although he apparently received cost-of-living raises at some point), his salary was more than seven of the Business Managers IIIs and only Connie Snipes, a white male hired with SCDC on June 2, 1971, had a higher salary (at $42,193) than McMillan. Further, although McMillan argues that he had five years of service at grade 38, he has shown nothing to dispute that he only had one and one-quarter years of service in grade with SCDC or that the

12. McMillan argues that his request was denied twice and that (presumably first in April and then again in October) SCDC did not come up with the grounds which were used in the October 1994 denial of his raise until after it was determined that he did indeed have an "exceeds" rating. Increases require a personnel rating of "exceeds" or "substantially exceeds" (SCDC employees are rated on a system of "substantially exceeds", "exceeds", "meets", or "below" performance goals). At the first Executive Staff consideration of McMillan's increase, the computer system had a default rating of "exceeds"

because the plaintiff's rating, which in December 1994 was "exceeds", had not been input into the system. The corrected "exceeds" rating was input sometime in May or June 1994. There is nothing to show, however, that the plaintiff was denied the raise because his "exceeds" rating was not available. The records of the Executive Staff merely state that the April pay increases were held over. SCDC Ex. 1. Strawhorn stated that McMillan's evaluation rating had no effect on his failure to recommend the raise. Strawhorn Dep., at 8.

average years of service provided by SCDC are incorrect.

McMillan further argues that SCDC failed to follow agency guidelines when it denied his salary increase. SCDC argues that McMillan's allegation that SCDC failed to follow agency guidelines and violated its "Performance Pay Increases and Decreases Guidelines" when it denied plaintiff's salary on the ground of comparisons with years of service and salaries of other Business Manager IIIs is not properly before this court and instead must be raised through the SCDC administrative grievance process and that violations of Agency Guidelines do not rise to the level of direct evidence of discrimination. SCDC Reply Memorandum, at 2. A procedure for granting performance pay increases was developed and signed by Evatt in 1994. Moore also signed the procedure in 1995. SCBCB Study, at 10. These guidelines merely state that these factors cannot be the only reasons for receiving a performance increase, not that they cannot be used as the only reasons for denying such an increase.

c. *Plaintiff's Proof of Pretext*

■ Once a defendant has articulated a legitimate, nondiscriminatory explanation for the adverse action, the plaintiff must show that the employer's asserted justification was merely pretextual and "that discrimination was the real reason" behind the adverse employment action. *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742. As discussed above, McMillan has failed to show that SCDC's legitimate, nondiscriminatory action for its adverse action was false. Further, he fails to show any direct evidence of racial discrimination. Thus, McMillan fails to show that SCDC's articulated reason was merely pretextual and that unlawful discrimination had a terminative influence on SCDC's decision.

2. *Retaliation*

McMillan alleges that he was retaliated against by the denial of a salary increase, the denial of a promotion, and the transfer of his duties to a white female. Complaint, at 3. Specifically, he alleges that subsequent to the filing of his administrative charge and during the course of the administrative charge and later during the pendency of the suit in this court, SCDC has continued to engage in a plan of retaliation by: (1) involuntarily reassigning him, without reasonable cause or justification, from the Educational Services Division to the Financial Accounting Branch in a position under new supervisors with different responsibilities which are not consistent with his background and experience; (2) failing to provide him with a position description of his new position for almost eleven weeks; (3) failing to provide him with guidance or supervision in the new position; and (4) giving him a low performance evaluation. Amended Complaint, at 3–4. Retaliatory conduct is prohibited by 42 U.S.C. § 2000e–3(a). SCDC argues that: (1) McMillan cannot establish a prima facie case of retaliatory discrimination; (2) SCDC's actions were based on legitimate, nondiscriminatory reasons; and (3) McMillan cannot prove that these reasons are pretextual.

■ To establish a prima facie case of retaliation, a plaintiff must prove that:

1) that the employee engaged in protected activity;

2) that the employer took some adverse employment action against the employee; and

3) that a causal connection existed between the protected activity and the adverse action.

*Ross v. Communications Satellite Corp.,* 759 F.2d at 365; *Williams v. Cerberonics, Incorporated,* 871 F.2d 452, 457 (4th Cir.1989); *McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir.1991); and *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994). A plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. *Warren v. Halstead Indus., Inc., supra;* and *Mitchell v. Baldrige,* 759 F.2d 80 (D.C.Cir.1985).

SCDC does not appear to dispute that McMillan engaged in protected activity, but

argues that McMillan fails to show that SCDC took an adverse employment action against him.

### (1) *Raise*

In his complaint, McMillan appears to allege that the denial of his raise was a retaliatory act. The denial of the raise (October 1994), however, occurred prior to the filing of the SCHAC or EEOC grievances (or any grievances with SCDC) and thus was not retaliatory.

### (2) *Promotion*

■ McMillan also appears to allege that he was denied a promotion in favor of a white employee. He never specifies what job he applied for and was denied. Although he may be referring to the Fiscal Manager II job in the Division of Financial Accounting, which was filled by Sequi, he does not show that he ever applied for that job. McMillan argues that SCDC "failed to notify him of an available position in Financial Accounting for which he would be well-qualified," but he does not allege that the position availability was not posted or that he was prevented from applying for the position. In his affidavit, Tony Strawhorn states that McMillan never applied for a promotion after January 24, 1995 or while he was employed as a Business Manager III. Strawhorn Aff. Strawhorn also stated "I have no knowledge that he [McMillan] applied for that [Sequi's] job. That job was open and went through the process that the agency requires to hire someone in that position." Strawhorn Dep., at 22.

### (3) *Transfer and Transfer of Functions*

McMillan alleges that SCDC retaliated against him because his job functions were transferred to Sequi, his job in Educational Services was eliminated, and he was transferred from Educational Services to Financial Accounting. SCDC argues that McMillan fails to show that these actions were retaliation because they were not adverse actions and because SCDC has articulated a legitimate, nondiscriminatory reason for the actions. Strawhorn states that: (1) Evelyn Sequi was hired as Fiscal Manager II on January 8, 1996; (2) the decision to transfer McMillan to Financial Accounting was made prior to Sequi's employment at SCDC; (3) Sequi did not relieve McMillan of his duties, (4) Sequi is McMillan's new supervisor, not his replacement; and (5) McMillan's transfer was not a demotion and did not involve a reduction in salary or benefits. Strawhorn Aff.

■ McMillan fails to show that his transfer of functions or his transfer to Financial Accounting were adverse employment decisions. A transfer accompanied by a material adverse change is actionable. *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132 (7th Cir.1993). However, a transfer absent a reduction of salary, benefits, and title is not considered actionable because there is no adverse employment action. *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379 (8th Cir.1994). McMillan fails to show that he suffered a change in title, salary, benefits, or grade level and thus fails to show that the transfer of functions or that his transfer was an adverse job action.

■ Even if McMillan were to show that the transfer of his job functions or his transfer to Financial Accounting was an adverse job action, SCDC has articulated a legitimate, nondiscriminatory reason for its actions which the plaintiff has not rebutted. McMillan admits that he knew about the reorganization, stating:

> I was told June 22nd of 1995, I was told that my position would be transferred. In November, again, my position would be transferred there. In March, I was told ... or I saw that in the strategic plan, I would be transferred there. But after filing the complaint, then my job was going to be abolished.

McMillan Dep., at 78. In a memorandum to Archie through Moore on June 22, 1995, Strawhorn wrote:

> The Business Manager III position will be transferred to the Division of Financial Accounting where I understand your federal money is already being handled. This will facilitate the overall agency direction to have all such positions under that divi-

sion and will provide for better utilization of the position.

McMillan, Ex. 2. In a November 3, 1995 letter, Strawhorn wrote: "[t]he current Business Manager position will be reassigned to our Financial Accounting Division where it can be better utilized." McMillan, Ex. 2. In a memorandum dated February 6, 1996, Director Moore wrote:

> In keeping with changes taking place in our Division of Education, I am requesting that you jointly take action as soon as possible to transfer all financial accounting functions from the Division of Education to the Division of Financial Accounting. This action is in line with our overall goal of eliminating duplicate functions in the agency. Furthermore, as you know, we recently hired a branch chief in financial accounting with extensive experience in correctional education finances.
>
> I will expect that you decide how the existing Business Manager position in the Division of Education is to be utilized. Please apprise me of your action in this matter. Your assistance is appreciated.

McMillan Ex. 2. McMillan has not shown that SCDC's reasons for his transfer were pretextual because he has not shown anything to contradict that the reorganization, which affected numerous employees including McMillan, was undertaken to consolidate financial functions and eliminate duplicative positions.

### (4) *Other Retaliatory Acts*

■ McMillan also alleges that he was retaliated against after the filing of his complaints and this action because after he was transferred his supervisors showed animosity toward him, set him up for failure, gave him a low performance rating, gave him warnings, and ultimately suspended him for five days. SCDC argues that these claims are not properly before this court because they were not included in the January 24, 1995 Charge of Discrimination and because these actions occurred after the filing of this action.

■ A plaintiff need not exhaust his administrative remedies for retaliation that grows out of an earlier EEOC charge. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). Administrative remedies must be exhausted, however, when the alleged retaliation could have been raised in the original EEOC complaint. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546–47 (6th Cir.1991), citing *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545, n. 2 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989); *Riley v. Technical and Management Servs. Corp., Inc.*, 872 F.Supp. 1454, 1460 (D.Md.1995)(plaintiff must exhaust administrative remedies when the alleged retaliation could have been raised in the original complaint), *aff'd*, 79 F.3d 1141, 1996 WL 106744 (4th Cir.1996). McMillan's charges of retaliation stem from his earlier charges and thus are properly before this court.

SCDC has not addressed these retaliatory acts further. McMillan's allegations, however, are not "ultimate employment actions" and thus he fails to show that he has been subjected to an adverse action in order to establish a prima facie case of retaliation. *See Ward v. Johns Hopkins Univ.*, 861 F.Supp. 367, 377 (D.Md.1994)(defining "adverse employment action" as "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensating"); *see also Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.1997) (verbal threats of being fired, reprimands for violation of policy, and other such warnings do not amount to adverse employment actions because of their lack of consequence).

### *CONCLUSION*

McMillan fails to show that there exists a genuine issue of material fact as to whether the defendants violated his rights under Title VII by denying his raise or by retaliating against him. It is, therefore,

RECOMMENDED that defendant's motion for summary judgment be granted.