# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 12, 2020　　　　Decided April 14, 2020

No. 18-5330

DEBORAH KATZ PUESCHEL,
APPELLANT

v.

ELAINE L. CHAO, IN HER OFFICIAL CAPACITY AS SECRETARY,
DEPARTMENT OF TRANSPORTATION AND UNITED STATES
DEPARTMENT OF LABOR,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01279)

———

*George M. Chuzi* argued the cause and filed the briefs for appellant.

*Christopher C. Hair*, Assistant U.S. Attorney, argued the cause for appellees.  With him on the brief were *Jessie K. Liu*, U.S. Attorney, at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.  *Damon Taaffe*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Deborah Pueschel is a former employee of the Federal Aviation Administration ("FAA") whose full disability benefits were reduced after she ran for elective office.  She sued the Secretary of Transportation for unlawful retaliation and discrimination, and sued the Secretary of Transportation and the Department of Labor for violation of her First Amendment right to run for office without penalty.  The district court dismissed her complaint for lack of subject matter jurisdiction and failure to state a claim.  Upon *de novo* review, we affirm.

**I.**

According to the complaint, Pueschel began working for the FAA as an air traffic controller over forty years ago, in 1974.  Compl. ¶ 6.  Things did not always go well.  In 1980, she filed an Equal Employment Opportunity ("EEO") administrative complaint alleging a pattern of sexual harassment by male employees, and in 1981, she sued the FAA for alleged sexual harassment and reprisal.  *Id.* ¶¶ 10, 14.  Although losing in the district court, she prevailed on appeal on the ground that she had been subject to a hostile work environment.  *Katz v. Dole*, 709 F.2d 251, 256–57 (4th Cir. 1983); Compl. ¶¶ 18–19.  Pueschel continued to file other EEO complaints against the FAA in 1990, 1992, 1997, and 2001.  Compl. ¶ 21.

Pueschel also suffered physical and emotional injuries stemming from her employment.  *Id.* ¶ 11.  In May 1981, she injured her back and neck at work and filed a claim for workers' compensation with the Office of Workers' Compensation Programs ("OWCP").  *Id.* ¶ 12.  When she later called in sick due to back pain on the same day as an illegal air

traffic controllers' strike, *id.* ¶¶ 15–16, the FAA fired her on the assumption that she had participated in the strike and challenged her benefits claim, *id.* ¶ 16. Pueschel appealed and the Merit Systems Protection Board reversed her termination. *Id.* ¶¶ 17, 20. Then, in 1994, Pueschel experienced an anxiety attack on the job and never returned to work. *Id.* ¶ 22.

In September 1998, OWCP granted Pueschel's claims for full disability benefits based on the physical and emotional conditions resulting from her federal employment. *Id.* ¶¶ 23, 25. In 1999, the FAA terminated Pueschel's employment on the ground she was no longer able to work as an air traffic controller, and this time her appeal of the termination of her employment was unsuccessful. *Id.* ¶ 24. Thereafter, Pueschel unsuccessfully ran for the United States House of Representatives between 2000 and 2004 and again between 2012 and 2016. *Id.* ¶ 27.

The FAA informed OWCP by letter of October 9, 2015, that Pueschel had "demonstrated, and continues to demonstrate, the ability to run for elective office," and that her actions disprove her doctor's contention she "is 'permanently disabled' and that 'it is doubtful that she will be able to work in any . . . capacity.'" *Id.* ¶ 30 (quoting Letter from FAA to OWCP (Oct. 9, 2015)). In January 2016, OWCP reduced Pueschel's benefits, stating that she "was now capable of working full time as a 'customer service representative.'" *Id.* ¶ 31. When Pueschel wrote Margaret Gilligan, the Associate Administrator for Aviation Safety at FAA, on April 9, 2016, about these events and asked to return to work, preferably in the FAA Historian's office, *id.* ¶ 33 (referencing Letter from Deborah Pueschel to Margaret Gilligan (Apr. 9, 2016)), Gilligan responded by letter of April 15, 2016, that her request was a matter for Human Resources, *id.* ¶ 34 (referencing Letter from Margaret Gilligan to Deborah

Pueschel (Apr. 15, 2016)). On August 8, 2016, Pueschel filed an EEO complaint, the dismissal of which was affirmed by the EEOC's Office of Federal Operations, which also denied her request for reconsideration. *Id.* ¶¶ 38–42.

Pueschel filed a three count complaint against the Secretary of Transportation and the Department of Labor for violation of Title VII of the Civil Rights Act of 1996, 42 U.S.C. § 2000e–16(a), the Rehabilitation Act of 1973, 29 U.S.C. § 794a, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and the First Amendment of the United States Constitution. Count one alleged that the FAA retaliated against Pueschel in violation of the Rehabilitation Act and Title VII by informing OWCP of her congressional campaigns, which ultimately led to the reduction of her benefits. Compl. ¶¶ 44–46. Count two alleged that the FAA violated the Rehabilitation Act and the Americans with Disabilities Act by discriminating against her when it failed to rehire her after she requested to be hired for a position commensurate with her disability. *Id.* ¶¶ 47–49. Count three alleged that the FAA and OWCP violated Pueschel's First Amendment right to run for office without penalty by reducing her benefits because she ran for Congress. *Id.* ¶¶ 50–52.

The district court granted the defendants' motion to dismiss the complaint. *Pueschel v. Chao*, 357 F. Supp. 3d 18 (D.D.C. 2018). The court dismissed Count one for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), finding Pueschel's retaliation claim amounted to a collateral attack on OWCP's unreviewable disability benefits determination. *Id.* at 26. The court dismissed Counts two and three for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), finding Pueschel's discrimination claim against the FAA failed because she was not an "applicant for employment" within the

meaning of Title VII and the Rehabilitation Act. *Id.* at 27. The court found that Pueschel lacked standing to bring a constitutional claim against the FAA, *id.* at 28–29, which she does not challenge on appeal, and that Pueschel failed to state a First Amendment claim against OWCP, *id.* at 29–30.

Pueschel appeals, and our review is *de novo. Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011). Although the court must assume the truth of well pled factual allegations and reasonable inferences therefrom, the court is not required to accept Pueschel's legal conclusions as correct. *See, e.g., Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012). And as a threshold matter, Pueschel's complaint must include "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.

On appeal, Pueschel contends that the district court erred as a matter of law in dismissing Count one of her complaint because it is not directed at any action by OWCP but rather action by the FAA. She contends that the district court erred in dismissing Count two by imposing a non-existent formal application requirement for federal reemployment, relying on a forty-five-year-old, out-of-circuit district court opinion that did not involve a disabled employee trying to return to her former agency. The dismissal of Count three was error, she contends, because the federal government's demand that she surrender her benefits imposed an unacceptable burden on her ability to run for office. She notes that this court's precedent did not involve a choice imposed by the government and maintains that the district court's reliance on the Supreme

Court's approval of the Hatch Act was inapposite to the issue presented.

**A.**

The Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq*., provides that the decision of the Secretary of Labor or her designee "in allowing or denying a payment" of federal workers' compensation benefits is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b)(1)–(2). Consequently, as to Count one, Pueschel concedes on appeal that the prayer for relief in her complaint is "inartfully worded," Appellant's Br. 20, and urges Count one be read as "not . . . directed at any act by OWCP" and "aimed solely at the FAA's conduct," *id.* at 14. *See also* Compl. ¶¶ 44–46; Prayer for Relief ¶¶ 1, 4. We agree Count one can be so read, and therefore our review is not barred by the Act.

Even so, the obstacle to Pueschel's reprisal claim, instead, is the significant gap in time between the FAA's 2015 letter notifying OWCP of her ability to run for Congress, which Pueschel alleges was retaliatory, Compl. ¶¶ 29, 45–46, and the EEO complaints she filed between 1980 and 2001, *id.* ¶¶ 10, 21. Pueschel suggests this alternative ground should not be reached because the issue was not fully briefed in district court, but the government presented this alternative ground in the district court, and the issue has been fully briefed by the parties on appeal. Our review of the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6) is *de novo*. So "we may independently assess" that sufficiency. *Kaemmerling v. Lappin*, 553 F.3d 669, 676 (D.C. Cir. 2008).

Pueschel maintains that "[a]s a former employee of the FAA, [she] is protected from actions by the FAA directed against her because of discrimination and reprisal claims she filed against the [FAA]." Appellant's Br. 14. In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court recognized a former employee's right to bring retaliation claims, *id.* at 346. But Pueschel overlooks that in the absence of direct evidence of retaliation such claims are generally limited to conduct occurring shortly after the employee's protected activity. This court has viewed mere temporal proximity to support an inference of causation "only where the two events are very close in time," *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)). These cases were resolved on summary judgment, and not a Rule 12 dismissal, but Pueschel cannot deny that there was a gap of almost fifteen years between the FAA's 2015 letter about her congressional runs and her EEO complaints filed between 1980 and 2001. Here, the lack of temporal proximity prevents the court from drawing a reasonable inference of causality when no additional factual allegations support causation.

Although no bright line rule has been established, the Supreme Court has recognized that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" citing approvingly cases where three- and four-month intervals were found insufficient to infer causality between the protected activity and the adverse employment action. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). The Court concluded that an action taken "20 months later suggests, by itself, no causality at all." *Id.* at 274.

This court, too, has often analyzed temporal proximity in terms of months — not years. *See, e.g., Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (five months); *Hamilton*, 666 F.3d at 1358 (three months); *Mitchell v. Baldrige*, 759 F.2d 80, 86–87 (D.C. Cir. 1985) (four months). In *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006), upon considering whether the adverse action "took place shortly after" the protected activity, *id.* at 1220 (quoting *Mitchell*, 759 F.2d at 86), the court concluded that that the plaintiff survived the motion to dismiss because the alleged retaliation occurred "around the time" of his alleged protected activity and thus supported a reasonable inference that the government acted with a retaliatory motive, *id.*

Pueschel alleged that the FAA retaliated almost fifteen years after her protected activity. Compl. ¶¶ 21, 46. Her retaliation claim rests solely on the fact that she was formerly employed by the FAA and filed several EEO complaints between 1980 and 2001. Because these allegations, on their own, do not support a reasonable inference of causality, Pueschel's complaint fails to raise "more than a sheer possibility that [the FAA] has acted unlawfully." *Iqbal*, 556 U.S. at 678. Pueschel has shown no basis for the court to reverse the dismissal of Count one as we affirm on the alternate ground of failure to state a claim.

## B.

The Rehabilitation Act applies the substantive discrimination standards of the Americans with Disabilities Act to executive agencies, *see* 29 U.S.C. §§ 791(f), 794(d), and it makes Title VII rights, remedies, and procedures available to federal agency "employee[s] or applicant[s] for employment," *id.* § 794a(a)(1). Because Pueschel is neither an "employee" nor an "applicant" within the meaning of the Rehabilitation Act or Title VII, the district court ruled she failed to state a claim.

Pueschel challenges the district court's reasoning underlying the dismissal of Count two as assuming a material fact for which there is no support, namely a formal reapplication requirement.

Pueschel maintains that as a former FAA employee she fulfilled any application requirement for reemployment when she wrote to an FAA employee and requested a part-time assignment with the FAA Historian. *See* Compl. ¶ 33 (referencing her April 9, 2016, letter to Margaret Gilligan, FAA Associate Administrator for Aviation Safety). The district court, in her view, incorrectly assumed that this letter was not a sufficient application and that she was required to submit a formal application in order to be an "applicant." Her letter to Gilligan was incorporated by reference in her complaint and is properly considered on a motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Even assuming that a former employee's request for reemployment does not require the formality of an application submitted by an individual with no prior employment history with the agency, Pueschel's letter to Gilligan did not make Pueschel an "applicant" for employment under the circumstances. Pueschel, on her own initiative, wrote to an FAA employee with whom she was familiar; apparently Gilligan had been managing her EEO complaints since the 1980s, Appellant's Br. 7 n.4. Gilligan's reply by letter of April 15, 2016, stated she "was unable to respond" because this was a matter for Human Resources. Compl. ¶ 34. Although Gilligan advised Pueschel that she needed to submit her letter to Human Resources, Pueschel does not allege that she ever did. Neither does she allege that Gilligan had any connection to her requested position or to Human Resources more generally, or that Gilligan had any obligation to forward her

request to Human Resources. Pueschel also fails to allege that her letter obligated the FAA to offer suitable work pursuant to OWCP regulations. *See, e.g.*, 20 C.F.R. §§ 10.505–507. Pueschel alleges only that she received no further response. Compl. ¶ 34.

The district court, therefore, properly ruled that "[s]ubmitting a letter to an employee who does not handle employment-related requests does not make Pueschel an 'applicant' with respect to FAA." *Pueschel*, 357 F. Supp. 3d at 27. At minimum, Pueschel would need to send her letter to someone with the authority to grant her request or with an obligation to forward her request to the proper office or individual. Otherwise, this type of letter "could be sent to any one of hundreds or thousands of agency employees — or, worse, to unattended mailboxes or email accounts — and expose an agency to litigation simply for failing to discover it." *Id.* Because Pueschel never submitted her request in accordance with the FAA's division of responsibilities after receiving explicit information on how to do so, Pueschel fails to show that the district court erred in dismissing Count two of her complaint.

**C.**

After the FAA informed OWCP that Pueschel had demonstrated an ability to run for elective office, disproving her doctor's contention that she was "permanently disabled" and would be unable to work again in any capacity, Compl. ¶ 30, OWCP reduced Pueschel's disability benefits, finding that "she was now capable of working full time as a 'customer service representative,'" *id.* ¶ 31. Pueschel maintains that OWCP's determination violated the First Amendment because it relied "solely on the fact that she was a candidate" to determine that she was ineligible for certain disability benefits. Oral Arg. Rec. 15:04–12 (Feb. 12, 2020).

In *Branch v. FCC*, 824 F.2d 37 (D.C. Cir. 1987), this court recognized that the "right to seek political office . . . . is undeniable, though the Constitution and the Supreme Court's cases in the area do not pinpoint the precise grounds on which it rests," *id.* at 47. In *Branch*, a television news reporter maintained that a federal statute "extinguishe[d] his right to seek political office" because it required broadcast media to provide "equal time" to political opponents, and his station management, relying on this statute, had advised him that if he wished to maintain his candidacy he must take an unpaid leave of absence during his campaign. *Id.* at 39, 47. The court held that the statutory burden was "justifiable as 'both reasonable and necessary to achieve the important and legitimate objectives of encouraging political discussion and preventing unfair and unequal use of the broadcast media.'" *Id.* at 49 (quoting *Paulsen v. FCC*, 491 F.2d 887, 892 (9th Cir. 1974)). The court further reasoned: "[N]obody has ever thought that a candidate has a right to run for office and at the same time to avoid all personal sacrifice" and "many people find it necessary to choose between their jobs and their candidacies." *Id.* at 48. For support, the court cited the Hatch Act, 5 U.S.C. § 7324(a)(2), which requires government employees to resign from work if they wish to run for certain political offices and which the Supreme Court upheld against constitutional challenge in *U.S. Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548, 567 (1973).

Pueschel would distinguish *Branch* and *Letter Carriers* on the ground that neither case involves the federal government's reduction of disability benefits. In her view this fact is determinative because both cases involved a constitutional challenge to a federal statute and the justifications underlying the federal statutes cited in these cases — prohibiting partisan political activity by federal employees or providing equal

media time to opposing candidates — are irrelevant to OWCP's decision here and Congress has not passed a statute requiring OWCP to reduce disability payments to beneficiaries running for public office.

The issue is not whether Congress has prohibited political candidates from receiving full workers' compensation benefits, but whether the burden imposed by the federal statutes in *Branch* and *Letter Carriers* is analogous to the alleged burden imposed by OWCP's determination. Pueschel alleges that OWCP partially reduced her workers' compensation benefits because it had determined in view of her ability to run for office that "she was now capable of working full time as a 'customer service representative.'" Compl. ¶¶ 30–31. That Pueschel may have to choose between retaining full disability benefits and her candidacy "does not differ in kind from the fact 'many people find it necessary to choose between their jobs and their candidacies.'" *Pueschel*, 357 F. Supp. 3d at 29–30 (quoting *Branch*, 824 F.2d at 48). Furthermore, her complaint contains no allegation that OWCP had animus toward her political activity, either her decision to run for political office or her political views or running for office in general. Absent these types of circumstances, Pueschel's right to seek political office is "not implicated." *See Branch*, 824 F.2d at 48. Because her First Amendment contention is foreclosed by our precedent, she has failed to show the district court erred in dismissing Count three of her complaint. To the extent Pueschel contends that OWCP has uniformly interpreted FECA to hold that a beneficiary's candidacy for office could not play any role in the determination of her disability or her benefits, her reliance on OWCP administrative cases on wage-earning capacity in view of later election to public office is misplaced. At issue here is whether OWCP's determination that Pueschel demonstrated an ability to perform work by running for public office violated

the First Amendment — not whether her wage-earning capacity was appropriately determined.

Accordingly, we affirm the dismissal of Pueschel's complaint.