# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-5158

September Term, 2024

FILED ON: JULY 1, 2025

TALISHA L. ROSEN-KELLOGG,
      APPELLANT

v.

KRISTI NOEM, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
      APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-03028)

Before: HENDERSON, KATSAS and RAO, *Circuit Judges*.

## JUDGMENT

The Court has considered this appeal on the record from the District Court for the District of Columbia and on the parties' briefs. The Court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is **ORDERED** that the judgment of the district court be **AFFIRMED**.

I

The Rehabilitation Act prohibits government agencies from discriminating against qualified individuals with disabilities. 29 U.S.C. § 794(a). The Act borrows enforcement provisions from Title VI of the Civil Rights Act, which include an implied private cause of action. *Id.* § 794a; *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022). The Rehabilitation Act also borrows substantive standards from the Americans with Disabilities Act. *See* 29 U.S.C. § 794(d). As relevant here, those standards prohibit disability-based discrimination in the terms and conditions of employment, 42 U.S.C. § 12112(a); require employers to make reasonable accommodations for qualified disabled individuals, *id.* § 12112(b)(5)(A); and prohibit retaliation for ADA-protected activity, *id.* § 12203(a).

II

From August 2011 through December 2021, Talisha Rosen-Kellogg worked for the Department of Homeland Security. Rosen-Kellogg suffers from various disabilities: degenerative disc disease, migraines, depression, and post-traumatic stress disorder. DHS accommodated

Rosen-Kellogg by allowing her to work remotely. It also gave her a cell phone, which Rosen-Kellogg asserts was related to her remote-work accommodation.

At some point during her tenure, Rosen-Kellogg complained that her manager was monitoring her work attendance via Skype. DHS later took away Rosen-Kellogg's cell phone. Coworkers also began to gossip about how Rosen-Kellogg spent her time. DHS became suspicious and investigated. It found that Rosen-Kellogg had been working remotely from her second home, double-dipping as a real estate broker, and using government equipment in connection with her real estate business. Rosen-Kellogg denied none of this. Instead, she argued that her real estate dealings complied with agency policy and that her second home provided a more relaxed atmosphere for managing her disabilities. DHS fired her.

Rosen-Kellogg sued. She alleged that DHS denied her a reasonable accommodation when it took away her cell phone. She also alleged that DHS engaged in disability discrimination by using Skype to monitor her work attendance and by firing her. And she alleged that DHS retaliated against her by harassing, investigating, and firing her because she complained about these supposed instances of discrimination. The district court dismissed these claims for failure to state a claim and denied Rosen-Kellogg leave to amend. Rosen-Kellogg then filed a motion to alter or amend the judgment, which the district court also denied.

III

We start with the dismissal for failure to state a claim, which we review *de novo*. *Payne v. Salazar*, 619 F.3d 56, 59 (D.C. Cir. 2010).

A

Rosen-Kellogg first claims that DHS unlawfully denied her an accommodation for her disability. The Rehabilitation Act requires employers to make reasonable accommodations for qualified disabled individuals. *See* 29 U.S.C. § 794(d); 42 U.S.C. § 12112(b)(5)(A). To state a reasonable-accommodation claim, a plaintiff must allege that (i) she was disabled; (ii) her employer had notice of the disability; (iii) she was able to perform the essential functions of her job with a reasonable accommodation for the disability; and (iv) the employer denied her request for that accommodation. *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014). The dispute here centers on the fourth prong—in particular, whether DHS denied Rosen-Kellogg a reasonable accommodation when it took away her cell phone.

An employer is not required to provide an employee with any requested accommodation; it "need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (cleaned up). As relevant here, a reasonable accommodation is one that enables a qualified individual to "perform the essential functions" of her position. 29 C.F.R. § 1630.2(o)(1)(ii). DHS accommodated Rosen-Kellogg's disabilities by allowing her to work remotely. Rosen-Kellogg contends that she needed a cell phone to work remotely. But there are many tools that might have enabled her to work from home—including the computer software that she was provided—and the complaint does not explain why other tools would not have sufficed. Moreover, the record suggests that Rosen-Kellogg suffered only trivial harms from the loss of her phone. For example, she protests that, without a cell phone, she had to log into her computer to post an "out of office" email. J.A. 62. Her reasonable-accommodation claim is therefore implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

B

Rosen-Kellogg next alleges that DHS discriminated against her because of her disability. The Rehabilitation Act prohibits employers from discriminating against a qualified individual "solely by reason of" her disability. 29 U.S.C. § 794(a); *see also id.* § 794(d); 42 U.S.C. § 12112(a). To state a discrimination claim, a plaintiff must allege that she suffered an adverse employment action because of her disability. *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020). Rosen-Kellogg argues that, because of her disability, DHS monitored her attendance on Skype and fired her. Neither allegation supports her claim.

The monitoring allegation does not involve an adverse employment action, which is one that causes "some harm." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). Monitoring work attendance does not cause the employee any cognizable harm. *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 72–73 (D.D.C. 2007) (collecting cases). On appeal, Rosen-Kellogg contends that other, similarly situated employees were not subject to monitoring. That assertion is irrelevant to the question whether monitoring is an adverse employment action. And in any event, the complaint made no such allegation.

The termination allegation contains no factual content to support a plausible inference that DHS fired Rosen-Kellogg because of her disability. *See Iqbal*, 556 U.S. at 678. Rosen-Kellogg contends only that discrimination may be inferred because officials involved in her termination were aware of her disabilities. But this does not suggest DHS fired her *because of* her disability, and the complaint contains no other allegations supporting a plausible inference to that effect. *See Hollingsworth v. Vilsack*, No. 23-cv-2427, 2024 WL 4332118, at *10 (D.D.C. Sept. 27, 2024) (explaining the causation pleading burden).

C

Rosen-Kellogg also alleges that DHS unlawfully retaliated against her. The Rehabilitation Act bars retaliation against an individual because she has opposed unlawful disability discrimination. *See* 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a). To state a retaliation claim, a plaintiff must allege "(1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). Rosen-Kellogg argues that DHS investigated and ultimately fired her because she complained that DHS took away her cell phone and monitored her on Skype.

Rosen-Kellogg does not allege facts supporting a plausible inference of causation. She alleges only that DHS "had knowledge of [her] protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). But the complaint does not clearly specify when Rosen-Kellogg first engaged in protected activity, or when DHS investigated her. Without that information, it is impossible to say whether the period between any protected activity and adverse action was short enough to support a plausible inference of causation. *See Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (suggesting an upper bound of several months).[*]

---

[*] The operative complaint suggests that DHS monitored Rosen-Kellogg between April 2018 and February 2020, but it does not say when she complained about this. J.A. 22. In her opening brief on appeal,

3

IV

We review the denial of Rosen-Kellogg's motion for leave to amend for abuse of discretion. *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017). Rosen-Kellogg never filed an actual motion for leave to amend; she requested leave only in a footnote to her opposition to DHS's motion to dismiss. A "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of" Federal Rule of Civil Procedure 15(a). *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (cleaned up). Absent any proper motion for leave to amend, the district court did not abuse its discretion in denying leave to amend. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–31 (D.C. Cir. 2012).

V

We review for abuse of discretion the denial of a motion to amend or alter the judgment under Federal Rule of Civil Procedure 59(e). *Menoken v. Dhillon*, 975 F.3d 1, 5 (D.C. Cir. 2020). Rosen-Kellogg fails to show any abuse of discretion here.

Rosen-Kellogg sought to amend the judgment so that she could make additional factual allegations. But she could have raised all of her new allegations prior to the entry of judgment. *See* J.A. 220. And Rule 59(e) may not be used make allegations "that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–28 (2d ed. 1995)).

Rosen-Kellogg further contends that amendment was necessary to prevent manifest injustice. She observes that the district court docket erroneously indicated that she had filed an amended complaint nine minutes after her original complaint. And she contends that the district court relied on this error in denying her motion for leave to amend. But the district court denied leave to amend because Rosen-Kellogg had never filed a proper motion, not because she had already filed an amended complaint. *See* J.A. 293–94. The docket glitch was irrelevant.

VI

For these reasons, we affirm the district court's judgment. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

---

Rosen-Kellogg asserts that she complained about the monitoring on December 23, 2019, and that the investigation kicked off in January 2020. But the complaint does not allege either of those dates.

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk